**TEXAS EMPLOYERS' INS. ASS'N v. HARKEY.**

No. 4517.

Court of Civil Appeals of Texas. El Paso.
July 10, 1947.

Rehearing Denied July 24, 1947.

Robert M. Turpin and Whitaker, Turpin, Kerr, Smith & Brooks, all of Midland, for appellant.

John J. Watts, of Odessa, for appellee.

PRICE, Chief Justice.

This is a workmen's compensation case. Plaintiff recovered compensation against the insurance carrier for total permanent disability arising out of an accidental injury occurring on April 21, 1945. Defendant, the insurance carrier, has perfected an appeal therefrom.

Plaintiff plead that within a six months period from the date of the accident he filed his claim for compensation with the Industrial Accident Board. This allegation is not in any way sustained by the record, and plaintiff's reason for making such an allegation does not appear. It is undisputed that the accident occurred on April 21, 1945, and that plaintiff did not file his claim with the Industrial Accident Board until January 19, 1946. In paragraph 11 of his first amended original petition he pleads as follows:

"Plaintiff alleges that he was advised by the doctors for the defendant insurance carrier that his injuries were not serious and that he had recovered from same and was in perfect shape to return to work, and plaintiff alleges that he did return to work and was able to work for a period of several months until on or about January 17, 1946, at which time he began having severe headaches and dizziness and discovered that his injuries were serious and thereupon he immediately filed claim for compensation and plaintiff pleads the foregoing facts as constituting good cause for his failing to file claim for compensation sooner than same was actually filed."

The court, as presenting the issue of good cause for failure to file, submitted issues 13, 14 and 15, which, with their answers, were as follows:

"Special Issue No. 13: Do you find from a preponderance of the evidence that Dr. Clayton advised plaintiff that he was not seriously injured and could return to work in thirty days? Answer: Yes.

"Special Issue No. 14: Do you find from a preponderance of the evidence that plaintiff relied upon such doctor's representations, if any, to such an extent that plaintiff refrained from filing claim for compensation sooner than same was actually filed? Answer: Yes.

"Special Issue No. 15: Do you find from a preponderance of the evidence that plaintiff relying on said doctor's representations (if you have found that he did) constitutes 'good cause', as the term is defined herein, for not filing his claim for compensation sooner than same was actually filed?

"By the term 'good cause' as used in this charge is meant whether or not the claimant has used that degree of diligence which a man of ant has used in the prosecution of his claim

ordinary prudence, situated as plaintiff was, would have used under the same or similar circumstances. Answer: Yes."

Among other objections urged by the defendant to each of issues 13, 14 and 15 respectively was the following:

"Because there is no pleading authorizing the submission of such issues."

Plaintiff's plea of justification for his failure to file his claim was that after he returned to work he did not suffer any ill effects from his injury until on or about January 17, 1946, at which time he began having severe headaches and dizziness, and discovered that his injuries were serious, and thereupon he immediately filed his claim. In comparing Special Issue No. 13 with the pleading it will be observed that in part at least plaintiff's justification for his failure to file the claim was that the doctors of defendant assured him that his injuries were not serious, and he could recover therefrom within thirty days. Reference to the pleading of good cause as set out herein will show the representation plead was that plaintiff had recovered from his injuries and was in perfect shape to return to work. It is thought a representation that plaintiff had recovered is materially different from one that he would recover in thirty days. It is thought that the basis of plaintiff's pleaded good cause is that after his return to work he did not suffer from his injuries until on or about January 17, 1946. Plaintiff's testimony was variant from this. His testimony was, in substance, that he returned to work some time in July, that within about a month thereafter he began to have severe headaches and pains. By his testimony he attempted to excuse his failure to file his claim with the Industrial Accident Board by reason of the fact that up to the time he did file his claim, by reason of his reliance on Dr. Clayton's representations he did not believe his disability was caused by the accident. He did not specifically plead that he relied upon Dr. Clayton's representations. His allegation was that he did "return to work and was able to work for a period of several months, until on or about January 17, 1946, at which time he began

having severe headaches and dizziness, and discovered that his injuries were serious, and thereupon he immediately filed his claim for compensation." Beyond any question the facts pleaded as good cause by plaintiff are refuted by his own testimony. According to his pleading, the onset of his disabilities after his return to work did not occur until January 17, 1946.

The following question was propounded to him on direct examination:

"Now you didn't file your claim for compensation until January 17, longer than the six months period. What kept you from filing that claim sooner than that, Mr. Harkey—sooner than you filed it? Answer: Well, Dr. Clayton told me I would be all right and could go back to work in about 30 days, or in 30 days anyhow, and that I couldn't go back to work before that on account of my hand would be too sore."

The evidence seems to indicate that plaintiff returned to work sometime in the latter part of July, 1945. In reply to the question:

"When you went back to work, what happened? Answer: Well, I worked about a month and began to feel worse and have headaches all of the time, every day, and was not doing my work as I should, really laying down when there wasn't somebody to watch us.

"Q. Did you know that getting hit like that would cause you to have headaches beginning several months after the injury? Did you know that? A. No, I am not no doctor:"

In a word, plaintiff's pleaded justification was that after his return to work his injuries did not manifest themselves until January 17, 1946. His testimony, on the other hand, was that about a month after he returned to work his injuries did manifest themselves, but on account of the representations of Dr. Clayton he did not believe that same were due to his accident of April 21, 1945. In substance he testified that on January 8, 1946, Dr. Snow examined him and that for the first time he laid his trouble, or had notice that the pains and headaches which he was then suffering from and had been suffering from

from about a month after the time he returned to his work, were attributable to the accident of April 21, 1945.

To sustain good cause for failure to file a claim before the Industrial Accident Board, plaintiff is confined to facts plead as constituting such good cause. Johnson v. Employers Liability Assur. Co., 131 Tex. 357, 112 S.W.2d 449, and authorities there cited. Good cause goes to the very foundation of the case. Over the objection of defendant it is reversible error to submit facts other than those plead as such.

Here the facts plead by the plaintiff as constituting good cause were not submitted to the jury. The evidence fails to show good cause as plead by the plaintiff, in fact, plaintiff's testimony shows that well within the six months period he knew he was suffering from all of the disabilities now claimed to have produced his incapacity. In substance he plead that he did not know of them until the date of filing his claim. The onset of the disabling illness was January 17, 1946.

It is thought that even though during the six months period he suffered from dizziness, headaches, and soreness in the neck, and that in the exercise of ordinary diligence he failed to attribute them to the accident, that there would be good cause. Texas Employers' Ins. Ass'n v. Roberts, 135 Tex. 123, 139 S.W.2d 80 and authorities there cited; Texas Employers' Ins. Ass'n v. Frankum, Tex.Sup., 201 S.W.2d 800; Consolidated Underwriters v. Pruitt, Tex.Civ.App., 180 S.W.2d 461.

Beyond question plaintiff should show by pleading and proof that good cause existed up to the very date his claim is filed. Petroleum Casualty Co. v. Garrison, Tex.Civ.App., 174 S.W.2d 74.

Beyond question it is desirable that cases arising under the Workmen's Compensation law be clearly and simply submitted. In such cases, however, pleading is required. Over the protest of the insurance carrier it was reversible error to make the issue of good cause depend on facts not pleaded by the plaintiff. It was error to hold that good cause was shown where plaintiff's own testimony refutes the facts plead as constituting good cause.

Special Issues Nos. 1 and 4 were as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that the plaintiff, H. L. Harkey, sustained an accidental personal injury or injuries on or about April 21, 1945, as alleged in his petition?"

"Special Issue No. 4: Do you find from a preponderance of the evidence that the plaintiff sustained total incapacity for any length of time as a natural result of said accidental personal injury or injuries, if any, received by him on or about April 21, 1945?"

Numbers 2 and 3, submitted respectively as to plaintiff's being an employee and as to whether he was acting in the course of his employment at the time the injuries, were sustained. Numbers 1 and 4 are assailed on account of their generality. It is claimed that the jury might have taken into consideration the injuries which were plead, and as to which no proof was offered, or injuries that were not plead. It is thought there is no merit in the points of error. Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280, 284. In the case just cited it is said:

"It is not necessary that the employee prove that he sustained each of the injuries alleged in his petition. No useful purpose would be accomplished in separately submitting each of the alleged bodily injuries and asking the jury to find whether or not such injury was sustained. Neither would it be helpful to list all of the alleged injuries in a single issue and ask whether or not all or any of such injuries were sustained."

It is further held that the purpose of the trial is to ascertain whether the employee sustained an accidental injury to his body in the course of his employment, and the extent of the incapacity, if any, resulting therefrom.

Eliminating from issue No. 1 the words "or injury" and the clause "as al-

leged in his petition," the issue is the same as that cited in Southern Underwriters v. Boswell as the usual and customary way of submitting the issue. The court should have eliminated the words "as alleged in his petition" but complaint is not here made as to this.

 We cannot see any error in incorporating in the issue "an accidental injury or injuries." Plaintiff here sought to recover for a general incapacity. Such general incapacity might result from an accidental injury to the body, or accidental injuries. The issue as submitted confined the jury to the accident occurring April 21, 1945. Defendant complains that the court erred in refusing to submit to the jury its requested special issue that appellee's incapacity, if any, was not the result of causes entirely different and entirely disassociated from the accidental injury of April 21st, 1945. We think this was substantially submitted in special issues No. 16 and 17.

 Defendant's complaint that the court failed to unconditionally submit its defense of temporary incapacity is without merit. Such defense was unconditionally submitted in special issue No. 6 which was as follows:

"Is such total incapacity, if any you have found, permanent or temporary?"

The jury answered: "Permanent." In connection with the issue the jury were directed to answer "Temporary" unless they found from a preponderance of the evidence that such incapacity was not temporary. The issue in connection with the direction thereunder correctly placed the burden of proof. Southern Underwriters v. Schoolcraft, 138 Tex. 323, 158 S.W.2d 991; Texas Employers' Ins. Ass'n v. Cooper, Tex.Civ.App., 194 S.W.2d 819; T.R.C. p. 277. Furthermore, the exceptions to special issues 6 and 7 are not deemed sufficiently specific to call the court's attention to a period of total incapacity, followed by a period of complete capacity which in turn was followed by total incapacity. The only condition that the submission of the defense of temporary incapacity depended upon was that it was found to exist. The defense was submitted and the finding of the jury was against same.

For the error specified it is ordered that the cause be reversed and remanded for another trial.