TEXAS & NEW ORLEANS RAILROAD
COMPANY, Appellant,

v.

W. O. HANSON et al., Appellees.

No. 12737.

Court of Civil Appeals of Texas.

Galveston.

July 8, 1954.

On Remittitur July 22, 1954.

Rehearing Denied Oct. 7, 1954.

Stofer, Proctor, Houchins & Anderson, Conde N. Anderson, Victoria, for appellant.

Kirkham & Graham, Dean B. Kirkham, Corpus Christi, Duckett & Duckett, El Campo, for appellee.

HAMBLEN, Chief Justice.

This suit was instituted in the District Court of Wharton County by appellees, W. O. Hanson and wife, Vivian Hanson, for damages for the alleged wrongful death of their minor son, John Hanson, who died as a result of injuries sustained in a crossing collision between appellant's freight train and an automobile in which the deceased was a guest passenger. The trial was before a jury, which, in response to special issues, found the appellant's operatives negligent on five counts, namely: in failing to sound the locomotive whistle within a reasonable distance of the crossing; in failing to ring the locomotive bell when at least 80 rods from the crossing and until reaching the crossing; in operating the train at an excessive speed; in failing to maintain proper control of the train, and in failing to keep a proper lookout. Each of said acts was found to be a proximate cause of the collision. The jury also found the driver of the automobile negligent in several respects, but found that such negligence was not the sole proximate cause of the collision. Damages were assessed at $26,000, plus the sum of $678 which was stipulated by the parties to be the amount of funeral expense incurred by appellees. From the judgment rendered upon such verdict, appellants have appealed, presenting ten asserted points of error.

Point No. 1 is directed to the error of the trial court in admitting in evidence, photographs of the deceased child, first because the photographs were not properly authenticated, and second because they were immaterial. The record reflects that a witness well acquainted with the deceased testified that the pictures were a "very good likeness". This evidence is alone sufficient to admit the exhibits in evidence, appellant's objection going only to the weight to be given them. As to their materiality, the Supreme Court of Texas, in the case of Taylor, B. & H. R. Co. v. Warner, 88 Tex. 642, 32 S.W. 868, held that photographs of a deceased child were admissible to prove physical development, and the

probability of future growth and further development. Point No. 1 is, therefore, overruled.

■ Point No. 2 is directed to the error of the court in permitting appellees to cross-examine appellant's engineer as to whether or not he had run a block signal on an occasion subsequent to the collision here involved. Ordinarily such proof would be clearly irrelevant, and its admission over objection would be error. However, a review of the testimony in the present case shows that appellants undertook to prove by their own witnesses an unvarying custom on the part of railroad employees to obey all rules applicable to the operation of trains, among which were rules requiring the sounding of whistles and ringing of bells. Appellant's engineer, on cross-examination, testified in substance that he knew he had sounded the locomotive whistle on the occasion in question because the rules, which he always obeyed, required it. Having introduced the subject of rules, and the custom on the part of railroad employees to obey them, appellant could not properly object to such cross-examination. And since the witness based his knowledge of having sounded the whistle on this occasion upon the proposition that he always obeyed the rules, proof of a subsequent violation became highly material upon the question of credibility of the witness, and the weight to be given his testimony.

Appellant's Points 3, 4 and 5, are addressed to the proposition that the findings of the jury, that the train operatives failed to sound the whistle within a reasonable distance, failed to ring the bell at least 80 rods from and until reaching the crossing, and that the speed at which the train was operated was a proximate cause of the collision, are contrary to the great weight and preponderance of the evidence. Point 6 complains that there is insufficient evidence to raise the issue of proper control, and Point 7 is to the effect that the jury's finding of failure to maintain proper control is contrary to the great weight and preponderance of the evidence. Points 8 and 9, respectively, question the sufficiency of the evidence to support the submission of an issue on lookout, and complain that the finding thereon is contrary to the great weight and preponderance of the evidence.

This Court doubts that the phraseology of Points 3, 4, 5, 7 and 9, is such as to properly invoke the fact finding jurisdiction of this Court, which is invoked only by a complaint that the finding of the jury is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong. However, this Court has undertaken a review of all of the evidence, such as would be required if the points were in proper form, and after doing so, concludes that such points are without merit, and must be overruled.

The collision occurred in the town of Louise, Texas, on a Sunday afternoon. Appellant's tracks run generally north and south through the town, parallel to and about sixty feet east of the pavement of Highway 59. Within the town appellant's tracks are crossed by five public streets. The train was proceeding north along such track, and the vehicle in which the deceased was riding was also proceeding north along Highway 59, ahead of the train. At the fourth of the five crossings mentioned, the automobile turned to the right to cross the railroad track and was struck by the front of the locomotive. The evidence showed that the highway is heavily traveled, and that both it and the railroad track traverse the central part of the town of Louise. The evidence is uncontradicted that appellant's train consisted of the locomotive and sixty-eight boxcars, and that it did not diminish its speed through the town, but proceeded at from 38 to 40 miles per hour.

■ Appellees presented two witnesses who testified that they did not hear either the bell ringing or the whistle blowing. A third witness testified that he did not hear the bell ringing. All of appellant's employees in the locomotive, as well as several other witnesses, stated unequivocally that both the bell and the whistle were in operation. Appellant contends that because appellees' witnesses admitted that they

were not particularly concerned with the presence of the train or the warnings which it was sounding, their testimony is overwhelmed by that of its witnesses. The testimony by a witness in a position to hear, to the effect that he did not hear a certain sound, is always probative of the fact that such sound did not occur. The question of the credibility of a witness, and the weight to be given his testimony is within the exclusive province of the jury. The jury was entitled to believe the witnesses offered by appellees, and reject the testimony of appellant's witnesses. The findings made after doing so can be disturbed by a reviewing court only when they are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong. They were not so in this case. Appellant also contends that since the train was in too close proximity to the crossing at the time the vehicle turned off the highway to have stopped before reaching the intersection, therefore its speed could not have proximately caused the collision. The jury could have well concluded that any diminution in speed, even though the train be not stopped, would have prevented the collision, and therefore that its speed was a proximate cause thereof.

■ The jury found that the appellant's employees were operating the train at a greater rate of speed than a person of ordinary prudence in the exercise of ordinary care would have operated the same under the same or similar circumstances. This finding is not objected to by appellant, its objection being directed only to the finding that such speed proximately caused the collision. Speed is one element of proper control. We consider that our discussion of speed as a proximate cause of the collision adequately disposes of this complaint. As to proper lookout, there is evidence in the record that the driver of the automobile signaled for a right turn for some distance before turning. The jury had before it numerous photographs and scaled plats, from which it could reasonably have concluded that the appellant's employees could have seen such signal, and

thus have known that the car would turn to the right before it actually did so.

■ Having determined upon a review of all of the evidence that the findings of the jury above mentioned are not so contrary to the evidence as to be clearly wrong, necessitates and in fact includes a determination that there is evidence sufficient to require the submission of the issues upon which such findings were made, and thus disposes of appellant's Points 6 and 8.

■ By Point 10, appellant complains that the allowance by the jury of the sum of $26,000 in damages is manifestly excessive under the evidence. The determination of the question thus presented is one of the most difficult with which an appellate court is confronted. The matter of the amount of damages to be awarded in a case of this character is one in which the jury is allowed a wide discretion. Their finding should stand unless it is so clearly excessive as to raise the belief that the jury was motivated by passion or prejudice. For reasons which we will attempt to demonstrate, this Court feels that the verdict of the jury in the present case is excessive to that extent.

■ It is conceded by the litigants that the only element of damages recoverable by appellees in this case consists of the pecuniary value to them of the services of their son until he reached 21 years of age, less the costs and expense of his care and maintenance during minority, and the value of such contributions they might reasonably expect from him after he became 21 years of age. The deceased was 12 years old at the time of his death. Appellees were respectively 52, in the case of the father, and 42, in the case of the mother. The period during which appellees would be entitled to their son's services was some period less than nine years. The deceased was in the eighth grade in school. The evidence was to the effect that he expected to continue through high school. His earnings consisted of 75 cents per week earned by distributing circulars for a merchant in Louise, and some unstated amount earned

by cutting grass. It is apparent, therefore, that for approximately one-half of the time before reaching majority, the deceased would not earn an amount sufficient to off-set the expense incidental to his care and maintenance. In the remaining four to five years after high school and before majority, it is illogical to suppose under any circumstances that his services would have a value to his parents, over and above the expense of his care and maintenance, of more than a small fraction of the $26,-000 which the jury awarded. The verdict, to be supported on any theory, must rest on the proposition that a most substantial part of the total would be justified by con-tributions which the deceased might reason-ably be expected to make voluntarily after reaching his majority. In undertaking to consider the value of contributions which might be reasonably expected at such a future time, the jury, and, concededly, this Court, is indulging in pure speculation. And we further concede that a jury of twelve men is as completely capable of speculation as this Court. It is not our purpose to substitute our speculation for that of the jury, but rather to undertake to rationalize the proper award to be made in this case by comparison with the numerous decisions of many other courts under com-parable fact situations.

■ Appellant, in its brief, contends that there is no reported case in Texas where even a jury has awarded over $16,-000, much less a case where such an amount has been held by an appellate court not to be excessive. We do not purport to have read every case dealing with the subject in Texas. We have examined all of the cases cited by the litigants in this case, as well as some additional cases, and to the extent of that examination find that appel-lant is correct in the contention made. We do find a decision by the Federal Appellate Court, 9th Circuit, approving a verdict of $20,000.00 in the case of the death of a five year old child. Covey Gas & Oil Co. v. Checketts, 187 F.2d 561. The San An-tonio Court of Civil Appeals, in the case of Sharpe v. Munoz, 256 S.W.2d 890, reviews a number of decisions wherein awards in

excess of $18,000 were approved. However the facts in the cases there reviewed are not sufficiently analogous to those in the case at bar to serve as a basis for comparison. In no jurisdiction have we found any case approving an award approaching the $26,000.00 here involved. In 14 A.L.R. 2d there appears an extensive review of the subject beginning on page 485, and conclud-ing on page 559. In that review the authors have undertaken to classify the cases re-ported according to ages of the infants in-volved. On page 555 of the cited volume, there appears a classification of awards held not excessive as to decedents between seven and fourteen years of age. The highest award listed in that classification is $15,000 for the death of an eight year old boy. The vast majority of the awards there listed are under $10,000.

Each case must of course be considered in the light of the particular facts involved. The closest analogy to the facts with which we are concerned which we have found is the case of J. Weingarten, Inc. v. San-chez, decided by this Court in 1950, and re-ported in 228 S.W.2d 303. In that case an award of $15,208 was approved. The child in that case was a boy 14 years of age. His father was 55 and his mother 46. Judge Monteith, who wrote the Court's opinion, stated that while it is not debatable that the damages were high, they were not so high as to require a remittitur. In that case, the deceased child was proven to have an earning ability of $5 per day. Certainly if $15,000 is high under such circumstances, $26,000 is excessive under the facts in this case. We concede that this Court should take judicial knowledge of the inflation of our currency which has occurred, but we know of no such degree of inflation since the decision of the Sanchez case as will reconcile the award here made with that which this Court found to be high under facts which in themselves should support a higher award than will the facts with which we are concerned.

After examining all of the authorities which in point of time and in similarity of fact we consider to be of assistance, we conclude that the verdict here is excessive

to the extent. of $10,000. Since there is no other error in the judgment rendered, if within fifteen days the appellees will remit the sum of $10,000 from the amount awarded, the judgment will be reformed and affirmed; otherwise it will be reversed and remanded.

### On Filing of Remittitur

The $10,000 remittitur required by our opinion of July 8, 1954, having been duly filed with the Clerk of this Court, the judgment of the trial court will be reformed and affirmed so as to allow plaintiffs a recovery of $16,678, together with interest thereon, at the legal rate from the date of the trial court judgment until paid. The costs of appeal will be taxed against the appellees.

Reformed and affirmed.