**MISSOURI–KANSAS–TEXAS R. CO. of Texas, Appellant,**

v.

**Mrs. Ova HAMILTON et al., Appellees.**

**No. 15387.**

Court of Civil Appeals of Texas.

Dallas.

April 25, 1958.

Rehearing Denied May 30, 1958.

**116**

Wayne R. Howell, William. A. Thie, Denison, Elliott & Nall, Sherman, for appellant.

Pete White and Caldwell, Baker & Jordan and Robert Woodruff, Dallas, Gullett & Gullett, Denison, for appellees.

DIXON, Chief Justice.

This is an appeal from a judgment against appellant-defendant Railroad, growing out of a collision at 10:00 o'clock A.M. May 31, 1956, between an automobile and a train at the intersection of Munson Street and appellant's railroad tracks in the City of Denison, Texas. The collision resulted in the death of all occupants of the automobile, consisting of the father who was driving the car, his 15-year old son, and his married daughter.

Appellee-plaintiff Mrs. Ova Hamilton, surviving widow and mother, was awarded $26,152.45 in connection with the death of her 15-year old son Bobby Deel Hamilton. Johnny Starks, also an appellee-plaintiff, was awarded $26,383.95 in connection with the death of his wife Sandra Starks, daughter of the Hamiltons.

A jury answered numerous special issues, finding in substance that (1) the driver of the car, Hubert W. Hamilton, in a number of particulars was guilty of negligence which, in each of said particulars, was a proximate cause of the collision; (2) the train was traveling at an excessive rate of speed; (3) in excess of 20 miles per hour in violation of a City ordinance; (4) there was a failure to keep the train under proper control; (5) the crossing was extraordinarily hazardous by reason of the conditions surrounding it; (6) it was negligence to fail to maintain visible flasher signals and automatic wigwag signals; (7) there was no clearly visible electrical or mechanical device at the crossing; (8) the wet and slippery condition of the street was not the sole proximate cause of the collision.

The jury also found that Mrs. Ova Hamilton had suffered damages in the amount of $61,200 on account of the death of her husband, Hubert W. Hamilton; but the court, in view of the jury findings that the husband's negligence was a proximate

cause of his own death, denied his wife a recovery under the "community property interest" rule. Mrs. Hamilton has not appealed from this portion of the judgment.

Appellant's points of error Nos. 1 and 2 pose this question: Will the surviving wife be permitted to recover money damages for the death of her son where the negligence of her husband, the child's father, contributed to the death of their minor son? Appellant contends that the question as a matter of law must be answered in the negative.

As far as we have been able to learn, there is no reported Texas case which has passed on the exact law point presented here.

■ However appellant takes the view that the "community property interest" defense should control our holding. The "community property interest" defense, as applied to children, has been explained as follows: "* * * in an action for the injury or death of a child, the negligent parent is defeated by his own contributory negligence; the other parent is defeated because the recovery would be community property, and the negligent parent would be thereby enriched, hence neither parent can recover." 26 Tex.Law Rev. 463, 464. See also 33 Tex.Law Rev. 89.

■ In our opinion the "community property interest" defense is not applicable in this case. The evidence in the record before us is to the effect that the father, Hubert W. Hamilton, was killed instantly. Upon his death the community estate was terminated. 23 Tex.Jur. 98; 11 Am.Jur. 225. His minor son, Bobby Deel Hamilton, lived for approximately an hour and fifteen minutes after the death of the father. The cause of action for the son's death did not accrue until the instant of his death. Huntington v. Walker's Austex Chili Co., Tex.Civ.App., 285 S.W.2d 255; Art. 5526, Vernon's Ann.Civ.St. Upon the son's death after the father's death, a cause of action arose in behalf of the mother, the

cause of action being her separate property. Flores v. Brown, 39 Cal.2d 622, 248 P.2d 922; Carroll v. Beavers, Cal.App., 270 P.2d 23. This is so because the cause of action never existed during the lifetime of her husband, the child's father. Consequently the reason for the "community property interest" rule is lacking here, for the negligence of the father in this case will not enrich the community estate in which the father had an interest.

■ But appellant goes further. It contends that regardless of the "community property interest" rule, the wife is not entitled to recover for her son's death in this case for this reason: In the close family relationship of husband and wife each spouse impliedly authorizes the other to act for him or her in the common care and control of their children, consequently the negligence of one spouse will be imputed to the other. Darbrinsky v. Pennsylvania Co., 248 Pa. 503, 94 A. 269, L.R.A.1915E, 781; Beasley v. United States, D.C., 81 F.Supp. 518, at page 532. See also Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795; Lynch v. South Texas Lumber Co., Tex. Civ.App., 271 S.W.2d 456, and Bell v. Phillips Petroleum Co., Tex.Civ.App., 278 S.W.2d 407.

We are unable to agree with appellant. In the Lowery and Lynch cases, above cited, both parents entrusted the care and custody of their child to another person who thus became their agent. The child in each case was injured because of the negligence of the other person. The parents were not permitted to recover because the negligence of the other person as agent of both parents, was imputed to the parents. Neither is the Bell case above cited in point here. No child was involved. A wife sued for her injuries negligently contributed to by her husband. She was denied recovery under the "community property interest" rule. As to the Darbrinsky and Beasley cases, they state a rule which is not the law in Texas, and which is contrary to the rule in most if not all of the other State jurisdictions.

■ It has long been the law in Texas that the relation of husband and wife does not create the one as general agent of the other. Rankin v. Kerrville Bus Co., Tex. Civ.App., 115 S.W.2d 997, 999; 23 Tex.Jur. 146. Referring to the legal concept that the negligence of the husband may be imputed to the wife, Professor Greene, in 26 Tex.Law Review, 461, 465, says: "The imputed negligence doctrine has never been accepted in this State, but had been expressly repudiated. It has now been generally repudiated and few traces of it are found anywhere." In 23 Tex.Jur. 291, it is said, "* * * the rule now is that the husband and wife are liable personally only for their individual torts." See also Thomason v. Pac. Mutual Life Ins. Co., Tex.Civ.App., 74 S.W.2d 162 (syl. 12). Nor will the negligence of a parent be imputed to a child. Galveston, H. & H. Ry. Co. v. Moore, 59 Tex. 64; Williams v. Texas & P. R. Co., 60 Tex 205; Galveston H. & S. A. Ry. Co. v. Kutac, 72 Tex. 643, 11 S.W. 127; Western Union Tel. Co. v. Hoffman, 80 Tex. 420, 15 S.W. 1048.

Appellant's points of error Nos. 1 and 2 are overruled.

■ In its points Nos. 3 and 4 appellant alleges that it was prevented from obtaining a fair trial because of the prejudicial conduct of appellees' counsel in repeatedly referring to the presence of flasher lights at the nearby Hull Street crossing in violation of the court's instructions, and the court's refusal to grant a mistrial because of such conduct.

Hull Street runs parallel to Munson Street in the City of Denison. The Hull Street crossing of the railroad tracks is one block south of the Munson Street crossing. There was a bell-ringing signal device at the Munson Street crossing where the collision occurred, but there was no flasher light signal. At the Hull Street crossing there were both types of warning signal devices.

Appellees' counsel in his opening statement told the jury, "We expect to show you by other witnesses that this was an unusually dangerous crossing, that at the next crossing, that is the Hull Street crossing of the Katy track, that crossing was protected by flasher lights." Objection was made to this statement on several grounds. Appellees' counsel then said, "We withdraw that for the time being." The court sustained the objection and said, "The jury won't consider that."

Nevertheless later that same morning, when one of appellees' witnesses was on the stand, the same information was again placed before the jury: "Q. What about down there at Hull Street? Are there any flasher lights down there? A. Yes." Objection was again made but was overruled. However the following proceedings were then had: "The Court: Was it (the question) answered? I didn't know it was answered. A. Yes, it was answered, Your Honor. The Court: The jury won't consider it."

Thereafter for a third time the same information was elicited by appellees' counsel. When appellant's first witness was being cross-examined by appellees' counsel the following proceedings were had: "Q. And there is also a flasher wigwag at the Hull Street crossing? A. Yes, sir." Objection was made and sustained. A motion for mistrial was also made. The motion was overruled, and appellant was allowed its exception to the court's ruling.

In our opinion the evidence was not admissible. St. Louis Southwestern R. Co. of Texas v. Smith, 49 Tex.Civ.App. 1, 107 S.W. 638; Missouri, K. & T. R. Co. of Texas v. Matherly, 35 Tex.Civ.App. 504, 81 S.W. 589; Tex. Cent. R. Co. v. Randall, 51 Tex.Civ.App. 249, 113 S.W. 130. In 75 C.J.S. Railroads § 849, p. 143, it is said: "* * * evidence is inadmissible * * * as to safeguards or warning devices used at other crossings, *where the situation and*

*circumstance may or may not be similar."* (Emphasis ours.) There is nothing in the record before us to show that the conditions at the Hull Street crossing are similar to those at the Munson Street crossing. In the absence of any such showing there is no reasonable basis for inviting the jury to use the Hull Street crossing as a standard for concluding that appellant was negligent in not maintaining similar warning devices at the Munson Street crossing.

The only Texas case cited by appellees in this connection is Louisiana & Arkansas Ry. Co. v. Pruitt, Tex.Civ.App., 298 S.W. 2d 608, 611. But the case is not in point. The opinion merely states what the evidence showed. It does not indicate that any objection was made to the admissibility of the evidence, or that its admissibility was made a point on appeal, nor does the opinion pass on its admissibility.

In view of the court's instructions to the jury not to consider the evidence, it might ordinarily be held that the error had been cured, but the repeated presentation of the objectionable evidence despite the court's rulings leads us to conclude that the error cannot be considered harmless in so far as concerns the jury's answers to Issues Nos. 6 to 10 inclusive. Gonzalez v. Broussard, Tex.Civ.App., 274 S.W.2d 737. In answer to these issues the jury found that the Munson Street crossing was extraordinarily hazardous and that the failure of appellant to maintain (1) an automatic wigwag signal device, or (2) an automatic visible flasher signal was in each instance negligence which was a proximate cause of the collision. In making such findings we believe the jury was probably influenced by the repeated presentation of the erroneous testimony. For that reason we would reverse the judgment and remand the cause for another trial, were it not for the fact that the judgment, as we see it, should be sustained on other grounds.

█ The jury made other findings which we consider decisive and which are independent of the jury's answers to Is-

sues Nos. 6 to 10 inclusive. The jury found in answer to Issues Nos. 1 to 5 inclusive, and Issues Nos. 13 and 14 that (1) appellant's train was being operated at a higher rate of speed than was reasonable and prudent; (2) the train was being operated at a higher rate of speed than 20 miles per hour (this violated a City ordinance); and (3) the operators of the train failed to have the train under proper control—each of which acts of negligence was a proximate cause of the collision. These findings are themselves sufficient to support a judgment for appellees even if we reject the jury's answers to Issues Nos. 6 to 10 inclusive because of the objectionable testimony. The two sets of issues are entirely different and independent of each other. They depend on different evidence to support them. They are not in any way intertwined. A reading of the record as a whole convinces us that the objectionable evidence about the presence of flasher light signals at the Hull Street crossing did not in any way influence the jury in its answers about the train's excessive speed and lack of control at the Munson Street crossing. Under the circumstances we cannot say that the error here complained of amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Rule 434, Texas Rules of Civil Procedure.

Appellant's points Nos. 3 and 4 are overruled.

█ Appellant's point No. 5 alleges error because of inflammatory jury argument by appellees' counsel as follows: "* * * the two factors, I repeat to you, that caused this unfortunate accident was the speed and the condition of that crossing. (Counsel picks up some exhibits.) Pictures taken out there last week. No signal light, no anything, have been put up there yet. It is my deduction from the testimony * * * that the way the City of Denison is going to get flasher lights at the Munson Street crossing to keep the people from getting killed over

there is for this jury to write a sizeable verdict in this lawsuit." Objection was made to this argument, the objection was sustained, and the jury instructed not to consider the argument. A motion for mistrial was overruled.

In our opinion the argument was improper, but was not reversible error under the circumstances. Since the adoption of Rules 434 and 503, T.R.C.P., the rule of "presumed prejudice" has not prevailed in Texas. Walker v. Texas Employers' Ins. Ass'n, 155 Tex. 617, 291 S.W. 2d 298. Before a judgment is reversed because of jury argument two things must appear: (1) That the argument was improper and (2) that from the record as a whole the reviewing court is satisfied that it was reasonably calculated to cause, and probably did cause, rendition of an improper judgment in the case. Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W. 2d 596. Moreover, improper argument is generally regarded as error "curable" by instruction from the court to the jury to disregard the argument. Rogers v. Broughton, Tex.Civ.App., 277 S.W.2d 121. Appellant's point No. 5 is overruled.

Special issues Nos. 23, 24, and 25 inquired whether the driver of the automobile failed to slow down as he approached the railroad tracks, whether such failure was negligence, and if so, whether such negligence was a proximate cause of the collision. The jury answered "Yes" to each of the three questions. The jury was then instructed that if it had answered Issue No. 25 "Yes", to answer Issue No. 25–A, otherwise not to answer Issue No. 25–A. The jury answered Issue No. 25–A that the proximate cause found in its answer to Issue No. 25 was not the sole proximate cause of the collision. In its points on appeal Nos. 6, 7 and 8 appellant says that the conditional submission of Issue No. 25–A was error, because it deprived appellant of an affirmative submission of a defensive issue.

We are unable to agree with appellant. The three issues immediately preceding Issue No. 25–A were also defensive issues and were answered favorably to appellant. Issue No. 25–A was then answered unfavorably to appellant. We cannot see that the conditional submission of Issue No. 25–A was error under the circumstances, or that such conditional submission was in any way harmful to appellant. Gillette Motor Transport Co. v. Whitfield, Tex. Civ.App., 197 S.W.2d 157, affirmed 145 Tex. 571, 200 S.W.2d 624. Points Nos. 6, 7 and 8 are overruled.

Points Nos. 9 and 10 complain because the witness Glidden was permitted to testify that while Mayor of Denison he had orally asked appellant to install flasher lights at the Munson Street crossing. The witness testified that a letter had been sent to the railroad requesting flasher lights. His testimony about the letter was not altogether positive. A later witness testified that a search failed to disclose the original or a copy of such a letter. However the former Mayor also testified to an oral notice to the railroad in regard to hazardous conditions at the Munson Street crossing. He said that he and two other men had personally surveyed the railroad crossings in the City of Denison. Following their survey a conference was held with the railroad's superintendent at Denison, at which conference the hazardous conditions surrounding the Munson Street intersection were brought to the attention of the superintendent, but nothing was thereafter done by the railroad to alter said conditions. We think the testimony was admissible to show notice to the railroad. Fort Worth & Denver City Ry. Co. v. Looney, Tex.Civ. App., 241 S.W.2d 322; St. Louis, Southwestern Ry. Co. of Texas v. Duffy, Tex. Civ.App., 308 S.W.2d 202. Points Nos. 9 and 10 are overruled.

Appellant's points Nos. 11 and 12 attack the manner in which the court submitted Issues Nos. 6 and 3. Issue No. 6

was as follows: "Do you find from a preponderancce of the evidence that the conditions surrounding the railroad crossing in question were such as to make the same an extraordinarily hazardous crossing (as defined herein) at the time of the collision in question?" Issue No. 3, following the above pattern, inquired whether appellant's train was being operated at a higher rate of speed than was reasonable and prudent under the conditions then existing.

Appellant says that the manner of submission of the above issues was defective in that the phrases "the conditions surrounding the railroad crossing in question" and "under the conditions then existing" were too broad and general, and permitted the jury to speculate, since the issues as worded did not limit the jury to the conditions as pled by appellees, nor give the jury any guide as to what conditions might be considered in reaching a verdict.

We see no merit in appellant's position. In each issue the jury was limited to a finding made "from a preponderance of the evidence." It was not necessary to use language in the issues expressly limiting the jury to a consideration of the conditions pled by appellees. Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280 (syl. 9); Scott v. Gardner, Tex.Civ.App., 159 S.W.2d 121; Texas Emp. Ins. Ass'n v. Harkey, Tex.Civ.App., 208 S.W.2d 915. Appellant's Nos. 11 and 12 are overruled.

■ In its point No. 13 appellant complains that in answering the damage issues in connection with the death of Bobby Deel Hamilton the court failed by affirmative instruction to exclude "loss of affection" and "physical pain" as elements of damage.

The court's instructions in connection with the damage issue were as follows: "In considering the above issue and your answer thereto, you are instructed that you may allow only for the actual pecuniary value, if any, of the services of Bobby Deel Hamilton from the date of his death until he would have reached the age of 21 years, and you will deduct the reasonable and probable cost or expense of his care, support and maintenance during such time, and if you believe from a preponderance of the evidence that there was a reasonable probability that Bobby Deel Hamilton would contribute to Mrs. Ova Hamilton after Bobby Deel Hamilton reached twenty-one, you may also consider the present value of such future contributions as you may believe Mrs. Ova Hamilton had a reasonable expectation of receiving from her son after he reached twenty-one. You are further instructed that you cannot consider and you must not allow anything for the loss of her son's society or companionship, but you must confine yourself to the present value of the actual pecuniary loss, if any. You are instructed that you cannot consider and you must not allow any sum for the pain and suffering, if any, endured by Hubert Warren Hamilton, Bobby Deel Hamilton or Sandra Starks in answering this issue."

We find no reversible error in connection with the above instruction. The instruction expressly excluded "pain and suffer‚ ing." While it did not expressly name "affection" as an excluded element, the instruction did expressly exclude "anything for the loss of her son's society or companionship," and further instructed the jury to "confine yourself to the present value of the actual pecuniary loss, if any." Appellant's point No. 13 is overruled.

■ Appellant makes similar complaint in connection with the damage issue relating to the death of Sandra Starks. The instruction here was as follows: "In connection with the above issue and your answer thereto, you are instructed that you can only consider the actual pecuniary loss sustained, if any, and you may consider the present pecuniary value of such services, if any, which you may find from a preponderance of the evidence Mrs. Sandra Starks would, in reasonable probability, have rendered to her husband had she lived,

and you will deduct therefrom the reasonable cost of her support and maintenance. You may not consider and you cannot allow John Starks anything for consolation or for any sorrow, anguish, or grief resulting from the death of Mrs. Sandra Starks, and you cannot allow anything for the loss of her society or companionship. * * * You are instructed that you cannot consider and you must not allow any sum for the pain and suffering, if any, endured by Sandra Starks, or Hubert Warren Hamilton or Bobby Deel Hamilton in answering this issue." We think the instruction was sufficient. Appellant's point No. 14 is overruled.

■ The jury found that the amount of pecuniary loss suffered by Mrs. Hamilton by reason of her minor son's death was $25,000. In its points Nos. 15 and 16 appellant asserts that this amount was excessive. In support of its contention appellant refers us to the case of Texas & N. O. R. Co. v. Hanson, 271 S.W.2d 309, in which case the Court of Civil Appeals, after citing authorities, required a remittitur of $10,000, thereby reducing the judgment to $16,000.

At the time of the boy's death Mrs. Hamilton was 51 years of age with a life expectancy of 20.64 years. Prior to his death her husband had earned an average monthly wage of $350. Bobby Deel Hamilton, her only son, was fifteen years old at the time of his death. He was killed on the day of his graduation from Junior High School. His school grades had averaged 88 to 90 in various subjects. He had tried to get ahead in school and wanted to finish High School a year early. He is described by one of his teachers as an honest student, well liked by students and teachers. He gave no trouble either in class or on the playground. He was energetic, ambitious and persevering.

In the home he was obedient and well behaved. The boy helped with the supper dishes, helped clean house, mowed the lawn and helped take care of the livestock (cow, calf, chickens and hogs).

When not in school, Bobby worked at odd jobs. He helped his father mow lawns, tear down some buildings, and do clean-up work. He also washed dishes in a root beer stand on Main Street in Denison, earning fifty cents an hour. He used his money to buy his clothes and school supplies, and had saved $50 from his summer's work. He had bought a television set for the home. He was attentive to his mother. It is obvious that he had a deep concern for the welfare of his family, including his mother.

The jury was asked to find the pecuniary loss sustained by Mrs. Hamilton due to Bobby's death, taking into consideration the pecuniary value of his services until he became 21 years of age, and the value of probable future contributions, if any, after he became 21 years of age.

We have given careful consideration to the very able discussion by Chief Justice Hamblen in Texas & N. O. R. Co. v. Hanson, Tex.Civ.App., 271 S.W.2d 309, of the question of excessive damages in cases involving the death of minors. We think that case may be distinguished from the case now before us. In that case both parents were living, consequently it would be quite speculative whether their son would have made or would have needed to make any contributions to his parents after he became 21 years of age. On the other hand, in the case now before us Bobby Deel Hamilton, an only son, would have been left with a widowed mother. Assistance from Bobby probably would have been essential. Mrs. Hamilton was not employed. She lived on a small farm where there was livestock to be attended to and chores to be done. Bobby had already shown an inclination to help and had actually helped his family financially. In our opinion the finding of the jury that Bobby Deel Hamilton over the years before and after he became 21 years of age would probably have contributed to his mother as much as $25,000 in

services and money, is sustained by the evidence. We are unable to say that the verdict is excessive, or that the finding was the result of passion or prejudice. Bumgardner v. Allison, 238 N.C. 621, 78 S.E.2d 752; Correia v. Van Camp Sea Food Co., 113 Cal.App.2d 71, 248 P.2d 81; Union Transfer & Storage Co. v. Fryman's Adm'r, 304 Ky. 422, 200 S.W.2d 953. Appellant's points Nos. 15 and 16 are overruled.

█ In points Nos. 17 to 21 inclusive appellant complains because the expert witness Snider was permitted to testify that (17) the train struck the automobile, (18) otherwise the automobile would not have been thrown into the air, (19) the train struck the front part of the automobile causing it to go into a rapid spin, (20) it would take 35 feet for the brakes on an automobile to bring it to a stop if the automobile was being driven 25 miles per hour on wet asphalt, and (21) the driver of an automobile traveling 25 miles per hour approaching the Munson Street crossing, and seeing the train when the car was 68 feet from the west rail, would be unable to stop short of the crossing.

Snider was qualified to testify as an expert. He was a graduate of Wichita University; a safety engineer and accident analyst with 25 years experience. He served as an Assistant States Safety Consultant and Chief Safety Engineer at the Tinker Air Force Base. After the war, he was Safety Director for the Oklahoma City Bus Company for three and a half years.

For nine and a half years before this trial Snider operated a Driver Testing and Service School, testing and training professional drivers for trucking companies and fleets over a three-state area. He had written articles published in Safety Council magazines and had written two books dealing with safe driving and accident analysis. In his laboratory he had tested 11,000 persons for reaction time, and had cooperated with various police organizations in making braking tests over various types of services.

In this case the occupants of the automobile were all killed, so were unable to give their version of the collision. Appellees employed Snider to investigate. He visited the scene of the accident, making measurements and taking photographs. He examined other photographs taken by a newspaper photographer immediately after the collision. He examined and photographed the automobile at the wrecking yard to which it had been taken. Other witnesses testified that the conditions at the crossing and the condition of the automobile had not changed since the accident. Other witnesses testified that the automobile was tossed into the air by the collision and was thrown against a telephone pole. Red paint was found on the side of the car. The cowcatcher on the train was red. Other witnesses testified that the train hit the car.

We think Snider's testimony, which was opinion evidence, was admissible. Davis Transport Inc., v. Bolstad, Tex.Civ.App., 295 S.W.2d 941; Davis v. Younger Bros., Tex.Civ.App., 260 S.W.2d 637; Linkenhoger v. Gilbert, Tex.Civ.App., 223 S.W.2d 308; Zepeda v. Moore, Tex.Civ.App., 153 S.W.2d 212; 19 Tex.Jur. 134; 32 C.J.S. Evidence §§ 449, 451, pp. 86, 89; McCormick & Ray, "Texas Law of Evidence" (2d Ed.), sec. 1400; 20 Am.Jur. 687, 691; 5-A Am.Jur. 859, 876–877.

Finding no error which we believe requires a reversal of the trial court's judgment, we affirm the judgment.