Weiner's motion for supplemental instructions to the grand jury will remain under advisement.

**FIRST NATIONAL BANK IN DALLAS, Independent Executor of the Estate of John T. Higginbotham, Deceased**

v.

**The UNITED STATES of America.**

**No. CA 3–7343–C.**

United States District Court, N. D. Texas, Dallas Division.

July 15, 1976.

On Motion To Amend and Supplement Sept. 10, 1976.

Joseph Irion Worsham and Ronald M. Hanson, Worsham, Forsythe & Sampels, Dallas, Tex., for plaintiff.

Michael P. Carnes, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., William Guild, Atty. in Charge, Tax Division, Dept. of Justice, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

This is a civil action for refund of federal estate taxes and interest in the total amount of $6,819.64 assessed and collected from the Estate of John T. Higginbotham, who died on November 20, 1966. Plaintiff, Independent Executor of the Estate of the decedent, is a national banking association organized under the laws of the United States, and jurisdiction is conferred upon this Court by 28 U.S.C. § 1346(a)(1).

The facts in this case are in all important respects uncontroverted. John T. Higginbotham married twice, the first time to Verda Nelle Higginbotham on September 22, 1920. Verda Nelle died on September 15, 1948, survived by John and their four children. During their marriage they accumulated a substantial amount of community property, including six life insurance policies which are at issue in this suit. Verda Nelle's will provided that the residue of her estate be left in trust for their four children, with John as Trustee. John made no settlement with Verda Nelle's estate with respect to the life insurance policies and they were continued in full force and effect. Eventually, two of the policies were cashed in by John who retained the entire cash surrender proceeds. After remaining a widower for eight years, John married Norma Higginbotham on August 13, 1956; she survived him at his death in 1966.

The four insurance policies taken out during his marriage to Verda Nelle which re-

mained in effect when John died [1] generated proceeds of $108,675.24.

One of the policies, State Life # 266873, was taken out in 1920 and entirely paid for during Verda Nelle's lifetime. On a second, Washington National Life # N–345023, all premiums except $56.16, were paid by John during Verda Nelle's lifetime, and on a third, Aetna Life, # N–961812, all premiums except $140.40 were paid during Verda Nelle's lifetime. The fourth policy, Southwestern Life Insurance policy # 445371, is by far the largest item involved in this controversy. Besides being the largest policy involved ($100,000.00), it develops the legal principles governing all the policies.

This policy was taken out on October 7, 1941. Verda Nelle was the named beneficiary of the policy, and their four children were secondary beneficiaries. As the insured party, John retained the right to change the beneficiary. Annual premiums for this policy were $3,640. The community of John and Verda Nelle paid premiums for the seven-year period of 1941 through 1947, totalling $25,494.00. After Verda Nelle's death in 1948, John paid premiums individually for the six-year period of 1948 through 1953, totalling $21,852.00. Then, John had the Verda Nelle Higginbotham Trust pay premiums for the years 1954–1957, 1959, and $2,000 of the premium due in 1960, totalling $20,210.00. Finally, all of the 1958 premium and $1,642.00 of the 1960 premium were paid by the community of John and Norma, totalling $5,284.00.[2]

After John's death plaintiff collected the proceeds of each of the four life insurance policies. In July of 1967 and in January of 1968 plaintiff paid the Verda Nelle Higginbotham Trust a total of $112,755.38 of which $50,776.34 was with respect to claims made by the Trust in connection with the four insurance policies which remained in effect. Plaintiff then claimed this amount as a deduction on John's federal estate tax return.

The Internal Revenue Service did not allow the deduction claimed by plaintiff with respect to these proceeds. Rather, the defendant allowed a deduction limited to the claim by the Trust for premiums paid by it ($20,210), and one-half of the cash surrender value ($12,854.97) of the policies accrued as of Verda Nelle's death.

In addition, plaintiff paid to the Verda Nelle Higginbotham Trust the amount of $2,511.08, for which an estate tax deduction was claimed. This represented one-half of the net proceeds (after appropriate credit for premiums paid) on the two policies cashed by John after Verda Nelle's death. Although this claim was first allowed as a deduction by the Internal Revenue Service, defendant now claims this amount in its Amendment to its Answer as an offset against any recovery awarded plaintiff herein.

The controlling question to be decided by this Court is whether, on September 15, 1948, the estate of Verda Nelle Higginbotham owned a property interest in the insurance policies on the life of her husband, John. If her estate were entitled to a portion of the proceeds by virtue of a property right therein, or to one-half the cash-surrender value of the policies, then John's net taxable estate would be reduced, and thus the federal estate tax would be reduced.[3]

---

1. As stated above, two policies were cashed in by John after Verda Nelle's death and before his second marriage.

2. The record before this Court does not establish why John chose to make premium payments individually for a period of years, from the Verda Nelle Higginbotham Trust for a period of years, and from the community of John and Norma for a period of years. Plaintiff suggests that premium payments were made in that manner in order to maintain the Trust's ownership interest in the insurance policies.

Whatever John's reasoning might have been, it is not dispositive of this case.

3. John's estate has claimed a deduction for proceeds paid to Verda Nelle's Trust in figuring the estate tax for a "debt of decedent." Section 2053(a) of the Internal Revenue Code of 1954 provides in pertinent part:

(a) *General rule*—For purposes of the tax imposed . . . the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

* * * * * *

Plaintiff contends that Verda Nelle's estate owned, as of the date of her death, a one-half interest in the policies and proceeds which were paid upon the death of John. The government's position is that her estate owned nothing by virtue of the policies; that only by virtue of her residuary estate's later advancement of $20,210 to pay premiums, is it entitled to reimbursement in this amount.

■ State law controls the issue of whether or not Verda Nelle (and thus her estate) had an interest in the policies, and the extent of the interest, if any. *United States v. Bess*, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); *Commissioner of Internal Revenue v. Chase Manhattan Bank*, 259 F.2d 231 (5 Cir. 1958).

The question then immediately arises— the state law during what period is applicable? The Texas cases prior to 1957 are somewhat confusing and seem to be inconsistent with regard to community property rights and insurance. Some cases seem to hold that insurance is property, in which a wife can have a one-half community interest, *Blackmon v. Hanson*, 140 Tex. 536, 169 S.W.2d 962 (1943); *Womack v. Womack*, 141 Tex. 299, 172 S.W.2d 307 (1943); and other cases seem to hold that insurance is not property in which a wife can have a one-half community interest. *Volunteer State Life Ins. Co. v. Hardin*, 145 Tex. 245, 197 S.W.2d 105 (1946); *Warthan v. Haynes*, 155 Tex. 413, 288 S.W.2d 481 (1956). In 1957 the Texas legislature amended Article 23 of Tex.Rev.Civ.Stat.Ann. so that life insurance policies were included in the definition of "property." The Supreme Court in *Brown v. Lee*, 371 S.W.2d 694 (1963) recognized that the statutory amendment altered the legal theory of insurance set out in *Warthan*, and held that insurance policies were property following the enactment of the amendment. The Court construed the ownership of proceeds arising therefrom in accordance with Texas community property laws.

(3) for claims against the estate, and

\* \* \* \* \* \*

■ Plaintiff maintains that the 1957 amendment to Article 23 was merely "declaratory in nature" of what the law always has been, and thus should be applied retroactively to this case. Plaintiff also maintains that *Brown v. Lee*, decided subsequent to that amendment, governs this case. The Court cannot agree. It is quite clear that the caselaw prior to 1957 had established that a policy of insurance was not property, and that the legislature was changing that law by statutory enactment. This Court cannot apply that amendment and subsequent caselaw retroactively.

■ Plaintiff next argues that, in any event, the applicable law is that existing in 1966 when the proceeds of the policies were collected. The Court must also reject this contention. The applicable law is that in effect at Verda Nelle's death in 1948. At that time the community of John and Verda Nelle was dissolved, *Missouri-Kansas-Texas Railroad Co. v. Hamilton*, 314 S.W.2d 114 (Tex.Civ.App.—Dallas, 1958, reh. den., n.r.e.), and any and all property owned by Verda Nelle became vested in her heirs. Tex.Rev.Civ.Stat.Ann., Probate Code § 37; *O'Connor v. City of Dallas*, 337 S.W.2d 741 (Tex.Civ.App.—Texarkana, 1960, writ dism'd.).

The outcome of this case is thus determined by the law as it existed in 1948. Plaintiffs rely on *Blackmon* and *Womack* as the controlling cases, while the government maintains that *Volunteer State Life* governs the issues in this case. A close study of these cases, as well as the body of caselaw which had been developed from 1890–1957 with regard to insurance and community property, shows that the seeming inconsistency in the cases is only apparent, not real. *Commissioner, supra,* 259 F.2d 231, 245. Once the distinction between policy-rights and proceeds-rights is recognized, the cases fit into a pattern and cease to be inconsistent.

*Blackmon v. Hansen* dealt with the taxation of proceeds from insurance policies as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

upon the death of the insured. The court affirmed earlier rulings of the Texas courts that *proceeds* of a life insurance policy, taken out by the husband and payable to the estate of the decedent, the premiums of which were paid for with community property belonging to the community estate, are one-half the property of the wife, and one-half the property of the husband and taxable in his estate. *Martin v. Moran*, 11 Tex. Civ.App. 509, 32 S.W. 904 (Tex.Civ.App., 1895, no writ); *State v. Jones*, 290 S.W. 244 (Tex.Civ.App.—Amarillo, 1927), rev'd o.o.g., *Jones v. State*, 5 S.W.2d 973 (Tex.Comm'n. App.1928).

*Womack v. Womack* dealt with the division of the cash surrender value of life insurance policies upon divorce. The Supreme Court affirmed prior decisions of Texas courts which held that the *cash surrender value* of a policy is property, and may be considered and treated as community property if taken out after marriage and premiums paid with community funds. *Shoemaker v. Harrington*, 48 S.W.2d 612 (Tex.Comm'n.App.1932, jdgmt. adopted); *Russell v. Russell*, 79 S.W.2d 639 (Tex.Civ. App.—Ft. Worth, 1934, writ dism'd.).

*Volunteer State Life Ins. Co. v. Hardin* dealt with the precise issue involved in this case, that is, the ability of the heirs of an initial beneficiary to claim a property right in the proceeds of an insurance policy, where the insured survived his spouse-beneficiary and changed the beneficiary after her death. The Supreme Court affirmed earlier Texas cases which held that where the insured reserves the right to change the beneficiary in the policy, the beneficiary obtains no vested property right in the proceeds of the policy until the insured's death. *Howard v. Howard*, 158 S.W.2d 591 (Tex. Civ.App.—Texarkana, 1942, writ ref'd.). The court held that the heirs had a property interest in the cash surrender value, and could have demanded a partition of the community estate until the policies matured. At maturation upon the death of the insured, the proceeds are paid and the right to the cash surrender value lapses. *San Jacinto Building, Inc. v. Brown*, 79 S.W.2d 164 (Tex.Civ.App.—Beaumont, 1935, writ ref'd.). Finally, the court held that the husband as the manager of the community can lawfully make contracts of insurance and pay premiums with community funds without later reimbursing the community, in the absence of fraud. *Rowlett v. Mitchell*, 52 Tex.Civ.App. 589, 114 S.W. 845 (1908, no writ).

These cases establish that a property right does exist during the life of the insured as to *policy rights*, and these rights can be a community asset if the policy was taken out after marriage. These policy-rights include

> the whole bundle of incidents of ownership of property in a policy—all the rights except the right to the proceeds. This bundle includes all "the economic benefits of the insurance, the cash surrender value, the power to change the beneficiary, the power to surrender or cancel the policy, the power to assign the policy or revoke an assignment, the power to pledge the policy for a loan, the power to obtain from the insurer a loan against the surrender value of the policy."

*Commissioner, supra*, 259 F.2d 231, 245–246. Thus the right to the cash surrender value can belong equally to a husband and wife and can be divided upon divorce.

As for *proceeds-rights*, these cases establish that, where the insured has retained the right to change the beneficiary, the property interest does not exist prior to the existence of the proceeds themselves at the death of the insured. Thus, in *Blackmon*, the insured died survived by his spouse-beneficiary. Upon his death she owned one-half of the proceeds as her share of that community asset, and her one-half could not be taxed in the insured's estate. His one-half interest was taxed in his estate, although of course that portion also went to his wife as beneficiary. In *Volunteer State Life*, however, the wife-beneficiary predeceased her husband, and the court correctly held that no property right in the proceeds existed at her death to vest in her heirs. The only property right which existed at her death which could vest were the policy-

rights, specifically the cash surrender value. Her heirs never demanded a partition of this community asset, and so the right lapsed at the maturity of the policy.

Applying the principles established by these cases, the following conclusions must be drawn in this case.

■ (1) The insurance policies, taken out by John during his marriage to Verda Nelle and the premiums for which were paid with community funds, were community assets of John and Verda Nelle during their marriage.

■ (2) The community property rights in which Verda Nelle enjoyed a one-half interest were the policy-rights.

(3) Verda Nelle did not have a one-half community property interest in the proceeds during her lifetime. The proceeds-rights were inchoate until the death of the insured, and therefore were not "property" which could vest in her estate when she predeceased John. This principle applies notwithstanding the fact that at the time of her death she was the named beneficiary under the policies.

■ (4) The only property right which vested in Verda Nelle's estate was the right to one-half the cash surrender proceeds, should John cash in the community policies prior to their maturity. This he did with two policies, Nos. 163216 and N–961813. Verda Nelle's estate is entitled to $2,511.08, and plaintiff may properly deduct this amount from the taxable estate of John. This is so even though no demand was made by her estate, since John was trustee of her estate and his estate cannot assert his failure as trustee to apportion the cash surrender proceeds as a defense to repayment.

■ (5) However, with regard to the policies which matured into proceeds at John's death, Verda Nelle's estate is not entitled to one-half of the cash surrender proceeds at her death. Any right to the cash surrender proceeds was extinguished when the policy-rights were transformed into proceeds-rights. John's position as trustee of her estate did not require him to cash in all

policies and give her estate one-half of the cash surrender proceeds; it merely required him to distribute her one-half interest if and when he did cash any policies in.

■ (6) The change of beneficiary from Verda Nelle to John's estate constituted no fraud on Verda Nelle's community interest since that interest no longer existed after her death.

■ (7) Finally, it is clear that John as manager of the community could pay the premiums from community assets without reimbursing them, in the absence of fraud upon Verda Nelle. There is nothing in this case which indicates any fraudulent activity on John's part by paying premiums from community assets while Verda Nelle was living. Indeed, during her life she was beneficiary under the policies. Although the Court does not impute any fraudulent intent to John thereafter, the Court does agree with the parties that the $20,210 paid by Verda Nelle's Trust for premiums should be reimbursed to it.

For these reasons, plaintiff is entitled to a deduction on the federal estate tax return in the amounts of $20,210 and $2,511.08, but for no other amounts. The federal estate tax should be computed accordingly.

## MEMORANDUM OPINION

### ON MOTION TO AMEND AND SUPPLEMENT

Plaintiff has filed a motion to amend and supplement Findings of Fact and Conclusions of Law following the filing of the Court's Memorandum Opinion on July 15, 1976.

■ Paragraph I of Plaintiff's motion claims that plaintiff should be entitled to interest on the $2,511.08 at the rate of ten per cent (10%) per annum from the time insurance policies Nos. 163216 and N–961813 were cashed in. Paragraph II of the motion, in part, claims interest at the rate of ten per cent (10%) per annum on one-half of the cash surrender value of the policies as of the time of Verda Nelle's death, or one-half of the amount of the premiums

paid on the policies as of the time of Verda Nelle's death. As pointed out in the Court's July 15, 1976 Memorandum Opinion, in July of 1967 and in January, 1968, plaintiff paid the Verda Nelle Higginbotham Trust a total of $112,755.38 of which $50,776.34 was with respect to claims made by the Trust in connection with the four insurance policies which had remained in effect, plaintiff claiming this amount as a deduction on John's federal estate tax return. The defendant allowed a deduction to the extent of $20,210, being the premiums paid by the Trust and in addition allowed a deduction of one-half of the cash surrender value ($12,854.97) of the policies accrued as of Verda Nelle's death. In the opinion of this Court and as stated in the July 15 Memorandum Opinion, plaintiff is entitled only to a deduction in the amount of $20,210 (premiums paid) and $2,511.08 (one-half of the net proceeds of the two policies cashed by John after Verda Nelle's death). Plaintiff now claims that it should be entitled to a deduction of the interest on these amounts from the time they were due to the Trust until the date of John's death. The Court disagrees.

At the time plaintiff made payment to the Trust of the total amount of $112,755.38, it was not asserted that any part thereof constituted the payment of interest but apparently was simply the amount established by the accounting between the two estates. No interest having been paid, it is my opinion that no deduction can be allowed on the estate tax return therefor.

The other part of Paragraph II of plaintiff's motion, and Paragraphs III, IV, and V are but a different approach to the questions of law determined by the Court in its July 15 Memorandum Opinion and are now, in the opinion of the Court, without merit.

In Paragraph VI of the motion, plaintiff claims a deduction based upon attorney's fees paid in conjunction with the prosecution of plaintiff's refund claim in this lawsuit. By its answer to plaintiff's motion, defendant states that it does not oppose plaintiff's request to amend and supplement Findings of Fact and Conclusions of Law with respect to the claim brought forward in plaintiff's Paragraph VI, and states that it awaits plaintiff's statement of attorney's fees and administrative expenses before committing itself to the reasonableness of the amount claimed. In this connection, defendant further asserts that the Court should adopt a further conclusion of law to the effect that "defendant is entitled to set-off against any recovery by virtue of attorney's fees, administrative costs, or otherwise allowable expenses" to plaintiff herein, in the sum of $12,854.97 which had previously been allowed as a deduction to the estate. The reason for the allowance of such set-off is that the $12,854.97 represented the cash surrender proceeds at John's death referred to in Paragraph V at pages 8 and 9 of the Court's Opinion. Accordingly, the estate was not entitled to a deduction of this amount which was erroneously allowed by the Internal Revenue Service. Because the Internal Revenue Service may correct a mistake of law, the Government is entitled to an off-set in that amount. The Court is of the opinion that this is a correct statement of the law and that the Government would be entitled to the off-set against any recovery by virtue of attorney's fees, administrative costs, or otherwise allowable expenses.

The parties are instructed to undertake the reaching of an agreement on reasonable attorney's fees, administrative costs, and allowable expenses, and prepare appropriate form of judgment allowing the off-set claimed by the Government.