**Jess W. MORRIS et ux., Appellants,**

**v.**

**Elward LONG et al., Appellees.**

**No. 4142.**

Court of Civil Appeals of Texas.

Eastland.

Dec. 9, 1966.

Rehearing Denied Jan. 13, 1967.

Richard W. Fairchild, Nacogdoches, for appellants.

Garrison, Renfrow, Zeleskey, Cornelius & Rogers, Lufkin, for appellees.

WALTER, Justice.

Jess W. Morris and wife filed suit against Elward Long and J. D. Harkrider for personal injury damages. Long was driving a wrecker belonging to Harkrider and ran into the rear of an automobile driven by Mrs. Morris. Based on a verdict, the court rendered judgment that plaintiffs take nothing.

The plaintiffs have appealed. They contend the court erred in failing to grant them a new trial because a juror gave an erroneous answer on voir dire examination. We find no merit in this point.

On voir dire examination the juror, Eugene Chapman, was asked, "Have you ever had any claims or suits asserted against you or your family?" and he answered "No, sir." On motion for a new trial Chapman was asked "At the time you gave Mr. Badders that answer was it true to your best knowledge, when you gave him the answer of 'No,' was it then true as far as you knew?" He answered "Yes, sir."

Chapman testified substantially as follows: that during the time he was in the service, stationed in Greenland, his wife was involved in a collision in Nacogdoches; that he came home after his wife's accident and she told him about her accident; that his wife did not tell him that any person was claiming that she owed them for the damages to the other vehicle; and that his wife had advised him that she had notified their insurance company about the accident. I assumed any claim would be against my insurance company and not against me. To my knowledge there had been no claim against me when I answered the question. There was a discussion about whether Mr. Harkrider had insurance in the jury room. I informed the jury about my wife's accident and made the statement that if Harkrider had insurance his company would be defending him.

It does not reasonably appear from the record that injury probably resulted to the appellants because of Chapman's incorrect answer on voir dire examination. Rule 327 Texas Rules of Civil Procedure; Childers v. Texas Employers' Insurance Association (1954), 154 Tex. 88, 273 S.W.2d 587.

The jury found Long guilty of failing to keep a proper lookout, failing to properly apply his brakes and driving too fast and that each of such acts was a proximate cause of the collision.

The jury found Mrs. Morris guilty of failing to keep a proper lookout for vehicles behind her car, failing to give an arm signal of her intention to slow or stop, failing to give an arm signal of her intention to turn left and that each of such acts was a proximate cause of the collision. They found that she did not bring her car to a stop immediately before the collision and that she did not abruptly decrease her speed. Appellants contend that each of the findings of proximate cause against Mrs. Morris are so contrary to the great weight of the evidence as to be clearly wrong and manifestly unjust.

Elward Long testified substantially as follows: I have been working for Mr. J. D. Harkrider since 1946. From the city limits to the place where the wreck occurred I was traveling approximately twenty five to thirty miles per hour. The first time I saw Mrs. Morris' car it was near the top of Orten Hill. It was close to a store near Woodam's car lot. At that time I was near Woodam's car lot. I would guess that I was about one hundred feet from Mrs. Morris' car when I first saw it. I was traveling from twenty to thirty miles per hour but I don't know how fast she was traveling but I would estimate that she was traveling about the same speed. I continued to watch her car all the way down the hill to the scene of the wreck. It was raining and I had my windshield wipers on. I maintained my same speed until I got about half way down the hill. I don't know whether she maintained her same speed or not. I gained a little on her. I don't know how far she was from the intersection when the wreck occurred. I saw her brake lights come on twice. He was asked the following questions and he gave the following answers:

"Q. Did you ever see her stop lights come on at anytime from the time you first saw her car from thereafter?

A. I seen her brake lights come on twice.

Q. Where was she the first time?

A. She was up along about that brick house when she first hit her brakes and the next time I seen them come on she had stopped all at once down there at Shawnee Street, that's what we call it, it might not be that and I hit my brakes and I just slid on into her.

Q. How far were you behind her when these lights came on the second time?

A. About a car and a half I imagine behind.—

Q. Yes. And you say that her lights came on just once at the rock house and went right back off and the next time that they came on you were a car and a half behind her?

A. Yes, sir.

Q. And where was her car at in relation to the intersection?

A. I will say she was about, a little past half way of it.

Q. Already passed the intersection?

A. Yes, sir.—

Q. You are saying now that at the time she put on her brake she was already out in the intersection?

A. You mean turning, sir?

Q. I am talking about at the time she put on her brakes the second time was she already out into Shawnee Street?

A. She wasn't turning on Shawnee Street.

Q. I didn't ask you about turning. I said was she already out into Shawnee Street, where Shawnee crosses Main?

A. Yes, sir, I would say so, yes, sir.—

Q. Was she going at that time faster or slower or at the same rate of speed as you were at the time she put on her brake the second time?

A. I really don't know, sir.

Q. Well, when she put on her brake she slid out into the intersection, didn't she?

A. No, sir, she stopped still and I knocked her out in, I hit her and her car moved some, I don't know how far because I didn't even measure it."

I applied my brakes when I was about "a car and half distance." I wasn't going over thirty miles per hour when I applied my brakes. I don't know whether my truck slowed down any after I applied my brakes but I know I slid. I slid into her and hit the back of her car. I knocked her into a car coming in the opposite direction. I testified on deposition that when I hit her car I was going about twenty miles per hour or at least twenty.

I didn't see Mrs. Morris give an arm signal or a blinking light signal any time before the accident. I went to her car after the collision and I could see that the left window was up and she rolled it down. If Mrs. Morris had given an arm or a blinker signal as much as one hundred feet before she arrived at the intersection I could have stopped in time to have avoided hitting her. I had been following Mrs. Morris' car "I believe up there about, I believe Mr. Jacobs lives there, up there by that house up there, that wooden house." I don't know how far that is from the intersection.

Mrs. Morris testified substantially as follows: I was involved in an accident on June 24th, 1960. I applied my brakes all the way down the hill to reduce my speed. I intended to turn left on Shawnee street. I gave a blinker signal and an arm signal that I was going to make a left turn. I checked my rear view mirror about where the brick house is and didn't see anything behind me. That was just before I made my signal. At the time I arrived at the intersection, I couldn't make a turn because there was a car coming from the opposite direction. I got my first view of the wrecker in a brief split second before the collision by looking in my rear view mirror. At that time it was "right on me."

We have considered the entire record and find that each of the findings of proximate cause against Mrs. Morris are so contrary to the great weight of the evidence as to be clearly wrong. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

The judgment is reversed and the cause is remanded.