James Fred **BIRCH**, Appellant,

v.

Dewey **HOWARD**, Appellee.

No. 407.

Court of Civil Appeals of Texas.

Tyler.

Dec. 12, 1968.

Rehearing Denied Jan. 9, 1969.

Bill F. Griffin, Jr., Center, for appellant.

Fairchild & Hunt, Robert Fairchild, Center, for appellee.

SELLERS, Justice.

This is a suit for personal injuries brought by appellant Birch against the appellee, Dewey Howard, as the result of a collision between appellee's car and appellant on a highway between Center, Texas, and Shelbyville, Texas. The highway at the scene of the collision was under construction by the contractor, Menefee Construction Company. The surface of the road had been completed and was marked with a double yellow line down the center, a white line dividing two lanes of traffic going south, a white line dividing two lanes of traffic going north, there being four lanes of traffic—two going south and two going north. On the date of the collision in October, 1965, the employees of the construction company were in the process of sodding the shoulders of the road using trucks loaded with grass to place the same on the shoulders of the road. To protect the traffic and the employees, the appellant, an employee of the contractor, had been placed in the center of the highway between the yellow lines to flag the traffic coming north toward Center. Mr. John Alford, another employee was placed about 500 feet north of appellant to flag traffic going south toward Shelbyville. In between, the trucks were sodding the shoulders of the highway. Some time about four o'clock in the afternoon, the appellee, who was driving a Comet automobile returning from Tyler, Texas, where he attended school, to his father's home, approached Mr. Alford who flagged him down and told the appellee to take it easy. The appellee continued on south toward appellant, driving on the inside lane going south at a speed of 40 to 45 miles per hour. Just as appellee was approaching appellant, a black car going north at considerable speed forced appellant in his position in the center of the road to step back some three of four feet into the path of appellee's car going south where he was struck by appellee's car and carried several feet before appellee's car was stopped. Appellant never saw appellee's car prior to the collision and did not know of its approach. Appellee, Mr. Alford, the flag man, and a Mr. and Mrs. Lemoine all gave evidence that they saw the collision and gave their views of what happened. While there were no speed zone markings between the two flagmen, there was a speed zone of 45 miles per hour marking the construction zone where the work was being done. The impact by appellee's car knocked appellant several feet, and he remained in the highway for some thirty minutes until the ambulance came and car-

ried him to the hospital. That he received severe injuries is without dispute in the evidence. The Court submitted the following issues to the jury:

## "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that after passing the flagman, John Alford, Dewey Howard was driving his car at a greater rate of speed than a person of ordinary prudence, exercising ordinary care, would have driven under the same or similar circumstances?

"Answer 'We do' or 'We do not'.

"ANSWER: 'We do not'.

"If you have answered Special Issue No. 1 'We do', and only in that event, then answer:

## "SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that such action, if any, was a proximate cause of the occurrence in question?

"Answer 'We do' or 'We do not'.

"Answer: ⸺⸺⸺

## "SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that Dewey Howard failed to make such a turn of his car to the right as would have been made by a person of ordinary prudence, exercising ordinary care, under the same or similar circumstances?

"Answer: 'We do' or 'We do not'.

"Answer: 'We do not'.

"If you have answered Special Issue No. 3 'We do', and only in that event, then answer:

## "SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the occurrence in question?

"Answer: 'We do' or 'We do not'.

"Answer: ⸺⸺⸺

## "SPECIAL ISSUE NO. 5

"Do you find from a preponderance of the evidence that the action of the driver of the old model black car in driving the same towards the spot occupied by Fred Birch immediately before the accident in question was not the sole proximate cause of the accident out of which this suit arose?

"Answer 'It was not the sole proximate cause' or 'It was the sole proximate cause.'

"ANSWER: 'It was the sole proximate cause.'

## "SPECIAL ISSUE NO. 6

"Do you find from a preponderance of the evidence that the defendant, Dewey Howard, was, at the time of the accident made the basis of this suit, acting in an emergency?

"Answer 'YES' or 'NO'.

"Answer 'Yes'.

"In connection with the above Issue, you are instructed that the word 'EMERGENCY' as used herein means a condition arising suddenly and unexpectedly and not proximately caused by any negligent act or omission of the defendant, Dewey Howard, and which called for immediate action on the defendant Dewey Howard's part, without time for deliberation.

"If you have answered Special Issue No. 6 'Yes', and only in that event, then answer the following:

## "SPECIAL ISSUE NO. 7

"Do you find from a preponderance of the evidence that after the emergency arose, if any, that the said defendant Dewey Howard did what an ordinary prudent person would have done under the same or similar circumstances?

"Answer 'YES' or 'NO'.

"Answer 'Yes'.

"If you have answered the foregoing Special Issue No. 6 Yes, and only in that event, then answer the following:

## "SPECIAL ISSUE NO. 8

"Do you find from a preponderance of the evidence that such emergency, if any, was the sole proximate cause of the accident in question?

"Answer 'YES' or 'NO'.

"Answer 'Yes'.

## "SPECIAL ISSUE NO. 9

"Do you find from a preponderance of the evidence that the occurrence in question was not the result of an unavoidable accident?

"In connection with the foregoing Special Issue you are instructed that 'unavoidable accident' means an event not proximately caused by any negligence on the part of either Fred Birch or Dewey Howard.

"Answer 'It was the result of an unavoidable accident', or, 'It was not the result of an unavoidable accident'.

"Answer: 'It was the result of an unavoidable accident.'

## "SPECIAL ISSUE NO. 10

"What sum of money, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Fred Birch for such damages, if any, as have been directly and proximately caused in the past, and will in reasonable probability be directly and proximately caused in the future by reason of such injuries, if any, sustained by Fred Birch as a direct and proximate result of the occurrence made the basis of this suit, and you shall take into account such of the following elements of damages, if any, as you find are established by a preponderance of the evidence, and none other:

" *   *   *

"Answer by stating an amount, if any, in dollars and cents.

"Answer 'Not any.'

## "SPECIAL ISSUE NO. 11

"What sum of money, if any, do you find from a preponderance of the evidence to be the amount of such reasonable charges, if any, for such reasonably necessary medical services and drugs, if any, as have been rendered Fred Birch from October 8, 1965, to the date of this trial as a direct result of the injuries, if any, suffered by him in the occurrence made the basis of this suit?

"Answer by stating an amount, if any, in dollars and cents.

"Answer: 'Not any.'

## "SPECIAL ISSUE NO. 12

"What sum of money, if any, do you find from a preponderance of the evidence to be the amount of such reasonable charges, if any, for such reasonably necessary medical services, if any, as will in reasonable probability be rendered Fred Birch in

the future beyond this date, as a direct result of the injuries, if any, suffered by him in the occurrence made the basis of this suit?

"Answer by stating an amount, if any, in dollars and cents.

"Answer: 'Not any.'"

Upon these findings the court entered judgment that appellant take nothing. From this judgment, the appellant has duly prosecuted this appeal.

Appellant assigns error that the jury's verdict is against the great weight and preponderance of the evidence. We have reviewed all of the evidence including that given by the eye witnesses and the appellant, and have reached the conclusion that the assignments must be overruled.

There are a number of assignments of error to the court's ruling admitting statements by the appellant to the effect that appellee was not to blame for the collision. While appellee was on the witness stand, the following questions and answers took place:

"Q   What did Mr. Birch tell you at the hospital concerning whether or not he was blaming you or it was your fault?

"A   He certainly didn't blame me, or my fault.   Said I couldn't help it and sure wasn't going to lose any friendship over me hitting him.

"Q   Said you couldn't help it and he wasn't going to lose friendship over you hitting him?

"A   Yes, sir.

"Q   Was not your fault?

"A   Yes, sir.

"Q   He told you that there at the hospital?

"A   Yes, sir.

"Q   Was anyone there with you when he made that statement to you?

"A   The night before he also—the same day I hit him, when I was down there, as soon as I got down there, he told me and my father that—my father didn't go with me the next day I don't believe or he may have, I don't remember.

"Q   He told you that on two different occasions.   The afternoon of the accident and the next day too?

"A   Yes, sir."

■ Similar statements were made to others by the appellant.   The objection was to the effect that such 'evidence was hearsay and inadmissible.   We overrule the assignment.   They are statements by a party to the suit and are against his interest and, as such, are admissible in evidence. McCormick and Ray, Law of Evidence, Second Edition, Section 1126, and authorities therein cited.

Mr. Alford, the flagman, was a witness for appellant and testified that he saw the collision and that it could have been avoided by the appellee if he had been driving at 20 miles per hour and in the outside lane where there was no traffic.

Over Plaintiff's objection, the court allowed Mr. Fairchild, the attorney for the defendant, to question Patrolman R. H. Vinyard, as follows:

"Q   What statements did he make to you there at the accident?

"MR. RIDDLE: Formal objection your honor.   That's hearsay and inadmissible.

"COURT: Overrule the objection.

"Q   You may answer.

"A   Mr. Alford came up there—I went on up to the scene.   Mr. Alford was still down below the accident.

"MR. RIDDLE: Object to that your honor, not being responsive.

"Q Go ahead.

"A And I stopped at the accident. Mr. Alford came on up there and I asked him if he saw it and he said yes, he did. And he said this boy could not help that at all. Said I was looking right straight at it.

"Q Now this boy, who did he—

"MR. RIDDLE: We object to that not being responsive and calling for a conclusion on the part of the witness, invades the province of the jury, and inadmissible.

"COURT: Overrule the objection.

"A This Howard boy, boy sitting here. Mr. Alford pointed him out.

"Q Did he say anything about the actions of Mr. Birch?

"A Yes, sir.

"Q What did he say to you about Mr. Birch?

"A He said Mr. Birch was running backwards into the path of this car.

"MR. RIDDLE: Please the Court, may we have a running objection to the entire line of what we have objected to as being hearsay?

"COURT: Yes, sir.

" * * *

"Q All right sir. Did he make any other statement?

"A Statement he said the Howard boy couldn't help it. Wasn't nothing he could do."

We are of the opinion that this was clearly admissible evidence to impeach the witness Alford and was admissible. It is also admissible as being a shorthand rendition of what the witness saw at the time of the accident. Texas Company v. Andrade et al., 52 S.W.2d 1063; Dilger v. Dilger, 271 S.W.2d 169; City of Fort Worth et al. v. Lee, 143 Tex. 551, 186 S.W.2d 954, 159 A.L.R. 125.

The appellant complains of jury misconduct in that they discussed insurance, mentioned workmen's compensation insurance and liability insurance, and that somebody else should pay appellant rather than appellee. Several jurors testified on Motion for New Trial with reference to these matters and after reviewing their evidence, we cannot say that the trial court was in error in overruling the Motion for New Trial.

The jury, after they answered all of the issues except 10, 11, and 12, returned their verdict into court and the Judge, upon discovering that the damage issues had not been answered, sent the jury out into a room to complete the answers to the damage issues. On retiring to the jury room, one of the jurors remarked that if they found any sum of money as damages, it would contradict the issues already answered. All of the jurors agreed with this statement and they wrote "Not any" in answer to each of the damage issues.

On first impression, this would seem to constitute jury misconduct, but in view of Rule 327, from which we quote:

" * * * if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.",

we cannot say that harm resulted to appellant since the issues denying appellant any recovery had already been answered. A similar situation was before the Waco Court of Civil Appeals in the case of Benton et al. v. B. F. Walker Truck Line, Inc. et al., 410 S.W.2d 822, where the court held that since the jury found that Plaintiff was negligent, the finding on the damage issue was immaterial.

Being of the opinion that all of appellant's assignments are without merit, the same are overruled.

The judgment of the trial court is affirmed.