Robert COLLINS et al., Appellants,

v.

Mr. & Mrs. James Davis GLADDEN, Sr., Appellees.

No. 7222.

Court of Civil Appeals of Texas, Beaumont.

March 18, 1971.

**630**

Renfrow, Zeleskey, Cornelius, Rogers & Berry, Lufkin, for appellants.

Brock & Williams, Houston, for appellees.

STEPHENSON, Justice.

This is an action for damages brought by the parents to recover for the death of their 18-year-old son. He was killed in a collision between a pick-up truck he was driving and a log truck driven by defendant, Robert Collins. Trial was by jury and judgment was for plaintiffs against all three defendants. The parties will be referred to here as they were in the trial court.

Plaintiffs sued Robert Collins as the driver of the log truck and as acting in the course and scope of his employment by defendants Lloyd Vann and/or Carl Williams, d/b/a Williams Lumber Company. The uncontroverted evidence showed Lloyd Vann to be the owner of the log truck. The jury made the following findings: Collins failed to keep a proper lookout, drove at a greater speed than a person using ordinary care would have driven, failed to make timely application of the brakes, failed to make proper application of the brakes, was negligent in operating the truck without brakes on the rearmost wheels, was negligent in driving to the left of the center line, was negligent in failing to remain on the right half of the highway, and that each of such acts of negligence was a proximate cause of the collision; that Vann was negligent in failing to equip the truck with brakes on the rearmost wheels, which was a proximate cause of the collision; and that Collins was an employee of Carl Williams, d/b/a Williams Lumber Company, and was acting in the course and scope, of such employment. The jury failed to find the deceased son guilty of any act of contributory negligence.

Defendants' first series of points involve the general contention that plaintiffs tried their case on the erroneous theory of law that defendants operated the log truck in

violation of the state law in not having brakes on the rearmost wheels of the trailer. Plaintiffs' last pleading, which was read to the jury, among others, contained these pertinent allegations: Defendants operated this trailer truck without brakes on the rearmost wheels in direct and open violation of Article 6701d, Section 132, Vernon's Ann.Civ.St., and quoted Subsection 3 of such section in full. Defendants were negligent in driving such tractor and trailer with brakes which were inadequate to control and stop it, contrary to the laws of the State of Texas. It was negligent entrustment to permit Collins to drive a vehicle not equipped with brakes on the rearmost wheels, in violation of Article 6701d, Section 132, V.A.C.S. Plaintiffs should recover exemplary damages because of not having brakes on the rearmost wheels in violation of the law. Defendants filed special exceptions to these pleadings, which were overruled by the trial court, which action is now assigned as one of the errors in this series.

The evidence in this case shows the log truck in question consisted of a tractor and pole trailer. "Pole Trailer" is defined in Article 6701d, Section 5(c), in essence, as a vehicle without motive power, designed to be drawn by another vehicle to which it is attached by a reach or pole, and ordinarily used for transporting such loads as poles or pipe. It is generally conceded at this point that this description fits the log truck in question. Section 5(a) of this article defines "Trailer" and Section 5(b) defines a "Semi-Trailer", and both specifically exclude a "pole trailer". That portion of Article 6701d, Section 132 listed under brake equipment required, which was set out in plaintiffs' pleadings, reads as follows:

"3. Every trailer or semitrailer of the registered or actual gross weight of three thousand (3,000) pounds or more when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle and so designed as to be ap- plied by the driver of the towing motor vehicle from its cab, and said brakes shall be so designed and connected that in case of an accidental breakaway of the towed vehicle the brakes shall be automatically applied; provided, that this Subsection shall not apply to any farm trailer or farm semitrailer operated or moved temporarily upon the highways when its gross weight does not exceed ten thousand (10,000) pounds and when the speed of such farm trailer or farm semitrailer does not exceed thirty (30) miles per hour, and when the vehicle and its operation meet all of the other requirements for total or partial exemption from registration fees as set forth in Section 2 of Chapter 88, General Laws of the Forty-first Legislature, Second Called Session, 1929, as last amended by Chapter 111, Acts of the Fifty-fifth Legislature, Regular Session, 1957 (codified as Article 6675a–2 in Vernon's Texas Civil Statutes). The term 'gross weight' as used in this Subsection shall mean the combined weight of the trailer or semitrailer and the weight of the load actually carried on the highway.

It is therefore apparent that the defendants were not required by statute to have brakes on the rearmost wheels of this pole trailer. However, the record in this case does not demonstrate convincingly that the trial court had enough information before it at the time the special exceptions were overruled to show the trailer involved was a pole trailer. This fact became apparent as the evidence developed and no special issues were submitted to this jury as to the violation of the statute in question.

The general rule frequently cited is that the trial court is granted a large measure of discretion in passing on exceptions to pleadings. In the absence of a showing of abuse of discretion or injury resulting from the trial court's ruling, the ruling will not be disturbed. Bounds v. Bounds, 382 S.W.2d 947 (Tex.Civ.App.—Amarillo, 1964, error ref. n. r. e.); Arrow Chemical Corporation v. Anderson, 386 S.W.2d 309

(Tex.Civ.App.—Dallas, 1965, error ref. n. r. e.); McKinney v. Flato Bros., Inc., 397 S.W.2d 525 (Tex.Civ.App.—Corpus Christi, 1965, no writ); National Life and Accident Insurance Company v. Morris, 402 S.W.2d 297 (Tex.Civ.App.—Austin, 1966, error ref. n. r. e.); U. S. Fidelity & Guaranty Company v. Hernandez, 410 S.W.2d 224 (Tex.Civ.App.—Eastland, 1966, error ref. n. r. e.); Weiler v. Weiler, 336 S.W.2d 454 (Tex.Civ.App.—Eastland, 1960, no writ).

■ The plaintiffs carefully refrained from alleging in their pleadings that the truck-trailer in question was a pole or log trailer within the statutory exception. Defendants' special exception was, consequently, in the nature of a "speaking demurrer", as defined in 2 McDonald, Texas Civil Practice (1970 Rev.Vol.), § 7.22, p. 213:

> "The 'speaking demurrer' is a special exception which, instead of limiting itself to the allegations of the petition and pointing out defects evident therein, states factual propositions not appearing in the petition and, in reliance upon such facts, seeks to challenge the plaintiff's right to recover. Speaking demurrers were not permitted under the former practice, and are not allowed under the 1941 rules. Such factual allegations should be ignored in passing on the sufficiency of plaintiff's pleading. If the defendant must rely upon extrinsic facts, he must raise the point by a plea in abatement or in bar, and not by special exceptions."

See also, Friedman v. Cohen, 404 S.W.2d 372, 375 (Tex.Civ.App.—Houston, 1966, no writ), wherein Chief Justice Bell collates the cases on the subject.

Furthermore, this rule, as set forth in Heusinger Hardware Co. v. Frost National Bank, 364 S.W.2d 851, 856 (Tex.Civ.App.—Eastland, 1963, no writ), is applicable:

> "Generally the facts alleged in plaintiff's petition are taken as true in passing upon exceptions thereto."

State v. Clark, 161 Tex. 10, 336 S.W.2d 612 (1960); Benson v. Benson, 368 S.W.2d 125 (Tex.Civ.App.—Eastland, 1963, error ref. n. r. e.).

Considering these rules, we do not find the trial court abused its discretion in failing to sustain defendants' special exception. The matter of harm or injury to defendants will be discussed later in this opinion.

■ The second prong of this series of points is that the trial court erred in refusing to allow the highway patrolman to testify that there is no requirement for brakes on the rearmost wheels of a pole trailer. The trial court sustained plaintiffs' objections to such questions. Defendants' bill of exception shows the highway patrolman would have testified that the Texas Department of Public Safety had no requirement for checking for brakes on pole trailers, and that there was no law requiring a pole trailer to have brakes.

■ The trial court properly excluded such testimony. It is elementary in our law that witnesses are to give evidence as to facts, and not statements of law. The sound reason for this exclusion is that because of his special training and experience, the trial judge is better equipped to determine questions of law and instruct the jury accordingly. See McCormick and Ray, Texas Law of Evidence, § 1423, p. 263.

■ At the close of the testimony, defendants tendered to the trial court a requested instruction to the jury that the law does not require brakes on the rearmost wheels of a pole trailer. The trial court refused to give this instruction in its charge to the jury and this is now assigned as error. The requested instruction is a general charge, in that it is an instruction on the law which was not necessary in the consideration or determination of any issue submitted to the jury. As said by the Supreme Court of Texas in Pittsburg Coca-Cola Bottling Works v. Ponder, 443 S.W.2d 546 (Tex.Sup., 1969), such a general

charge is unnecessary for an understanding of the issues submitted, and is repugnant to our special issue practice. Rule 277 authorizes a special instruction only when it is necessary to enable the jury to properly pass upon and render. a verdict upon such issues. Citing Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481 (1943). See also Lindley v. Lindley, 384 S. W.2d 676 (Tex.Sup., 1964).

■ Upon a hearing of their motion for new trial, defendants established the fact that this jury was guilty of misconduct. No findings of fact were made by the trial court, but the misconduct was established through all of the evidence heard. The night before deliberation, one of the jurors read portions of his driver's handbook, and reported his findings to the jury the next day. This juror made the statement that he had read the driver's handbook, and that all trailers, except farm trailers, had to have brakes when carrying in excess of 3,000 pounds. It has been held uniformly to be misconduct for a juror to bring to the attention of the other jurors facts regarding certain laws which were not covered by the court's charge. Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364 (1956), and cases cited. Under Rule 327, we must look to the record as a whole and determine whether or not injury probably resulted to the complaining party.

The foregoing points of error comprise the list which defendants rely upon as a basis for their contention that plaintiffs tried this case upon an erroneous theory of law as to brakes being required on the pole trailer. Defendants argue that these points of error, each separately, and then the combined effect, resulted in reversible error. We overrule these points of error.

We have carefully considered the entire record, including the voir dire examination of the jurors in coming to this conclusion. Plaintiffs' attorney discussed his case with the jury at great length, and made this statement as to the brakes:

"That is, we expect the evidence to show that the vehicle that Robert Collins was driving was a tractor-trailer type vehicle, a cab truck part pulling a trailer part. We expect the evidence to be undisputed that the trailer brakes, the trailer wheels —what I refer to as the rearmost wheels, had no brakes on them. Now, we are going to contend that during the course of this lawsuit that to take a large heavy truck and to hook it up with a trailer knowing that that trailer doesn't have any brakes on it and to blare down the highway at something in excess of the speed limit constitutes a willful and wanton disregard for the safety of other people using the highway, and we expect to prove that you just can't stop one."

It is noted that there was no mention of the absence of brakes constituting a violation of the law. As stated above, plaintiffs had plead common law negligence in failing to have brakes on the trailer and asked for punitive damages for gross negligence. The finding by the jury that defendants were negligent in not having brakes on the trailer is not under attack on this appeal. The first mention by anyone before the jury panel as to the law in reference to brakes, came by defendants' attorney. Such attorney, after describing a pole trailer to the jury, said:

"* * * yes, it didn't have brakes on it, but I tell you that there is no statute on the books of the State of Texas which require such a trailer as this to have—"

Plaintiffs' attorney objected on the ground that defendants' counsel should not instruct the jury as to the law, which was sustained. Later, the first testimony from any witness as to the law not requiring brakes came from defendant, Carl Williams. His attorney, on direct examination, after ascertaining that such trucks were subject to inspection, asked if he had ever been charged in any manner for not having such brakes, to which he answered

in the negative. On cross examination of the same witness, attorney for plaintiffs was inquiring as to whether it was just as easy to stop a trailer that did not have brakes, after answering it might be easier to stop with brakes, he added: "* * * but we log haulers have never had to put brakes on pole trailers." Counsel for defendants got the information before the jury again in his direct examination of the highway patrolman. He asked if the law required pole trailers to have brakes, and even though the court sustained plaintiffs' objection, the witness answered: "Not to my knowledge." Counsel for defendants then asked the highway patrolman if he had ever issued a citation for failure to have brakes on a pole trailer, an objection to which was sustained. He then asked the witness if he investigated the truck involved in this collision to see if there were brakes on the pole trailer, to which the witness answered in the negative. The witness was also permitted to state that he had seen many pole trailers operating in that area with no brakes on the rearmost wheels. The implication was clear, that the law did not require brakes on a pole trailer.

■ Under Rule 434, we cannot reverse a judgment on appeal unless we are of the opinion that the errors complained of amount to such a denial of the rights of the appellants as were reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. The only error we have found in reference to this series of points was that of jury misconduct. Under Rule 327, considering the entire record, we do not find that injury probably resulted to the complaining party. Every juror that testified on the motion for new trial argued the statement complained of was made only one time, and then at the time that issue was reached. The jury had already convicted the driver of the truck of negligence in failing to keep a proper lookout, of driving at a greater speed than a person using ordinary care would have driven, of

failing to make timely application of the brakes, and that each of these acts of negligence was a proximate cause of this collision. It was at this point that the issue as to common law negligence for failure to have brakes on the trailer was reached and the statement made. The foregoing findings of negligence and proximate cause are not challenged on this appeal.

Assuming, arguendo, that the juror Scott convinced the other jurors that the law required brakes on the rearmost wheels, and the jury found common law negligence because they believed the absence of brakes had something to do with such common law negligence, in view of the other previous findings by the jury, defendants could not have been injured. Mrs. Baird's Bread Company v. Hearn, 157 Tex. 159, 300 S.W.2d 646 (1957); Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806 (1958); State v. O'Dowd, 158 Tex. 348, 312 S.W.2d 217 (1958); Benton v. B. F. Walker Truck Line, Inc., 410 S.W.2d 822 (Tex.Civ.App. —Waco, 1967, error ref. n. r. e.); Birch v. Howard, 435 S.W.2d 945 (Tex.Civ.App.— Tyler, 1968, error ref. n. r. e.). As the Supreme Court said in the Cloud case, as applied to our present situation, any reference to the law requiring brakes on a pole trailer could have no more than an indirect and insubstantial bearing on the issues of proper lookout, speed and application of brakes which independently support the judgment and the answers to which are well supported by other competent and relevant evidence. These points of error are overruled.

■ On voir dire examination, Billy Hutto (later selected foreman of the jury) was asked this question: "Have you ever had a claim for bodily injury or been interested in the prosecution of such a claim?" to which the juror answered in the negative. On motion for new trial, the evidence showed Hutto's only brother was killed in an industrial accident and his widow made a deal to settle for $250,000.00 without a lawsuit. Hutto also testified that he had no dollars and cents interest in

his brother's death. We do not find this juror to be guilty of concealment of such a nature as to require a reversal of this case under Rule 327. That portion of the question asked, "or been interested in the prosecution of such a claim", was not specific enough at the outset. We do not conclude from the evidence presented on the hearing of the motion for new trial that Billy Hutto was interested in the prosecution of the claim for the death of his brother. Even though he was close to his brother and would naturally be interested in whether his brother's widow and children were provided for, that does not reveal an interest in the prosecution of the claim. Morris v. Long, 410 S.W.2d 308 (Tex.Civ.App.—Eastland, 1966, no writ); Myers v. Continental Panhandle Lines, 278 S.W.2d 365 (Tex.Civ.App.—Amarillo, 1954, no writ); Thompson v. Quarles, 297 S.W.2d 321 (Tex.Civ.App.—Galveston, 1956, error ref. n. r. e.); Southern Truck Leasing Company v. Manieri, 325 S.W.2d 912 (Tex.Civ.App.—Houston, 1959, error ref. n. r. e.); Dunn v. Sears Roebuck & Co., 371 S.W.2d 731 (Tex.Civ.App.—Houston, 1963, error ref. n. r. e.). This point is overruled.

Defendants have a series of points complaining of the failure of the jury to find plaintiffs' deceased son guilty of acts of contributory negligence in the manner in which he drove his pick-up truck. We examined the no-evidence point by looking only to the evidence favorable to such jury findings, and the great weight and preponderance of the evidence point by looking at the whole record. These points of error are overruled. There is not only some evidence, but much evidence to support the jury findings. We do not conclude such findings are clearly wrong or manifestly unjust.

The jury found, in answer to Special Issue No. 32, that plaintiffs had suffered $20,000.00 in pecuniary loss resulting from the death of their son, as representing reasonable contributions he would have made both before and after reaching the age of

21. The jury also found in answer to Special Issue No. 33 that $10,000.00 would fairly and reasonably compensate such son for his conscious physical pain and mental anguish. Defendants have points of error that each of their findings had no support in the evidence, had insufficient support in the evidence, that such findings were contrary to the weight and preponderance of the evidence, and that the amounts were excessive.

In considering these points, our authority is that set out in Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993, 994 (1916):

"All the Court of Civil Appeals can do, and all that is required of it to do * * * is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess * * * [Having] decided upon an amount that would be reasonable compensation * * * it should authorize a remittitur of the excess * * * in accordance with its sound judgment."

The foregoing quotation is taken from Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835, 840 (1959), where the conflicting lines of authority were discussed. But, as was said in Adams v. Houston Lighting & Power Company, 158 Tex. 551, 314 S.W.2d 826, 830 (1958):

"The case being one of an excessive verdict, there is no rule prescribing the manner by which the court determines the amount of remittitur."

See also, Smith, "Texas Remittitur Practice", 14 S.W.Law Journal 150, 154 (1960).

In passing upon these points, we mention that Justice Pope, in Sharpe v. Munoz, 256 S.W.2d 890, 893 (Tex.Civ.App.—San Antonio, 1953, error ref. n. r. e.), observed that: "There is hardly a hitching post to which jurors may tie in evaluating pain in

terms of money, yet, they may not roam too far." The same observation applies with equal merit to the situation in which a reviewing court must discharge its duty. However, the question is peculiarly within our jurisdiction and one which we now face.

■ The death of plaintiffs' son resulted from the negligence of the defendants and it is clear that death was not instantaneous. The mother testified that her son was conscious when she came to him at the scene of the accident, and remained conscious until they reached the hospital. Her testimony indicates that he knew her, asked for a drink of water, and appeared to be in pain throughout the trip to the Livingston hospital. The record indicates that the accident occurred about 3:30 p. m., and that the decedent was admitted to the hospital at 4:15 p. m., where he was administered Demerol and atropine. His condition at that time was described as cyanotic. He died upon the operating table at about 6:45 p. m., when his bodily functions ceased. As was said in Sharpe v. Munoz, supra (256 S.W.2d at p. 892):

"The only pain for which there can be a recovery is that which the child consciously experienced, and events that occurred subsequent to a merciful unconsciousness did not prolong nor increase the suffering and are not compensable."

There are two distinct lines of authority in Texas as to how both a trial court and an appellate court should determine the question as to excessiveness. Justice Norvell, while on the San Antonio Court of Civil Appeals, wrote the opinion in that frequently cited case, Kimbriel Produce Co. v. Webster, 185 S.W.2d 198 (Tex.Civ. App.—San Antonio, 1944, error ref. w. o. m.), in which it is stated that precedents are helpful and of some value in determining whether damages awarded for similar personal injuries are excessive or inadequate, and that there should be some uniformity as to the amounts of verdicts and judgments in the various cases. See also, Bill Hendrix Auto Parts v. Blackburn, 433 S.W.2d 237 (Tex.Civ.App.—Houston, 14th, 1968, no writ) and Coastal States Gas Producing Company v. Locker, 436 S.W.2d 592 (Tex.Civ.App.—Houston, 14th, 1968, no writ).

In Mitchell v. Akers, 401 S.W.2d 907 (Tex.Civ.App.—Dallas, 1966, error ref. n. r. e.), an award by the jury of $5,000.00 for pain and suffering was upheld. There, a three-year-old boy drowned and the doctor's testimony was that he died after struggling two to three minutes.

In City of Austin v. Selter, 415 S.W.2d 489 (Tex.Civ.App.—Austin, 1967, error ref. n. r. e.), an award by the jury of $10,000.-00 for mental anguish was upheld. There, a 14-year-old boy drowned and the testimony was that he probably realized his hopeless situation while struggling for several minutes.

In the Sharpe Case, supra, a 1953 case in which the jury verdict of $7,500.00 was reduced to $2,500.00, the court talks of the suffering being measured in seconds rather than in minutes.

In the case before us, the conscious interval was between 50 to 55 minutes, and there is direct evidence of physical pain and mental anguish throughout that period of time.

Other courts of civil appeals indicate in their decisions that each case must stand on its own facts and circumstances, and that comparison with other verdicts is of little or no help. Missouri Pacific Railroad Company v. Handley, 341 S.W.2d 203 (Tex.Civ.App.—San Antonio, 1960, no writ); Hayter Lumber Company v. Winder, 295 S.W.2d 730 (Tex.Civ.App.—Beaumont, 1956, error dism.). An excellent quotation from 15 Amer.Jur., Damages, § 72, is set out in the Sharpe Case, supra. Using either test discussed above, we do

not find the award of $10,000.00 for pain and suffering to be excessive.

■ We next consider the award of $20,000.00 for pecuniary loss. The evidence showed this to be a closely knit family. When the father was in the bait and fish business, their son helped in all phases of the work. As the father described his son, he was always willing to help, both before and after school. He would get up at 5:00 a. m. when called upon or work until midnight whether the weather was fair or rainy. One summer he got a job mowing a pasture and bought school clothes for himself and a brother, and helped his father financially. He quit school when he finished the 10th grade. His first job was to perform labor on a school construction job. He helped the family with the money he earned, and spent little on himself. He next had a job in Houston for a while putting up sheetrock. His last job was working on a pipeline as a caterpillar swamper. He continued to live at home and helped out with the family bills. He also mowed the yard when it needed it and did other jobs around the house. The courts of this state have long recognized the difficulty in attempting to prove the pecuniary value of the services of a child. The character of the evidence sufficient to support a verdict and judgment in favor of parents will depend upon the age and circumstances of each case. Russell v. Adams, 18 S.W.2d 189 (Tex.Civ.App.—Galveston, 1929, no writ); Brunswig v. White, 70 Tex. 504, 8 S.W. 85 (1888).

We have made a study of the amounts of verdicts and the surrounding circumstances as shown by many of the reported cases since 1950, including the following: North Texas Producers Association v. Stringer, 346 S.W.2d 500 (Tex.Civ.App.—Fort Worth, 1961, error ref. n. r. e.), $16,917.40; Texas & New Orleans Railroad Company v. Hanson, 271 S.W.2d 309 (Tex.Civ.App.—Galveston, 1954, error dism.), $16,000.00; J. Weingarten, Inc. v.

Sanchez, 228 S.W.2d 303 (Tex.Civ.App.—Galveston, 1950, no writ), $15,208.00; McKinney v. Tromly, 386 S.W.2d 564 (Tex.Civ.App.—Tyler, 1964, error ref. n. r. e.), $15,000.00; Union Transports, Inc. v. Braun, 318 S.W.2d 927 (Tex.Civ.App.—Eastland, 1958, no writ), $10,000.00; Missouri-Kansas-Texas R. Co. v. Hamilton, 314 S.W.2d 114 (Tex.Civ.App.—Dallas, 1958, error ref. n. r. e.), $25,000.00; City of Lampasas v. Roberts, 398 S.W.2d 612 (Tex.Civ.App.—Austin, 1966, error ref. n. r. e.), $17,500.00; City of Austin v. Selter, supra, $28,000.00. It is noted that the only two verdicts in excess of $17,500.00 are the Hamilton Case ($25,000.00) and the Selter Case ($28,000.00). In both of these cases the plaintiff was a widowed mother in which instance the expectation of receiving contributions from a deceased son was greatly enhanced. The only other case with a verdict as high as $17,500.00 is the Roberts Case ($17,500.00), involving a six-year-old son. From an examination of the record in the case before us, as well as from a comparison to similar verdicts, we have concluded this verdict is excessive by $2,500.00. If, within ten days, plaintiffs will remit the sum of $2,500.00, the judgment will be reformed and affirmed, otherwise it will be reversed and remanded.

The judgment is affirmed, conditionally.

KEITH, Justice (concurring).

I concur in the result reached in this cause, but feel called upon to comment upon two facets of the case with which I am not in complete accord.

The exercise in trial brinkmanship by plaintiffs' counsel in pleading and in reading to the jury the statutory requirement of brakes upon a pole trailer is not to be commended. Our record shows that hundreds of dollars were spent upon pretrial depositions and it is inconceivable that counsel urged in good faith the statutory

requirement of brakes upon the trailer involved in the suit. This effort to plant the seed of a legislative requirement in the minds of the jurors actually influenced at least one juror to the extent that he made his own, and incorrect, investigation of the law. For the reasons announced in the majority opinion, I am of the opinion that the misconduct of the juror did not constitute reversible error. However, so believing, I cannot but condemn tactics which make such a determination necessary.

Secondly, the standards laid down for our guidance in the review of damage findings leave much to be desired. In fact, from my study of the subject, I have concluded that there are *no* guidelines laid down for an appellate review of monetary awards in suits for damages involving personal injury and death or allowances for pain and suffering. Yet, we are *required* by rule and controlling decisions to exercise review jurisdiction over such awards. Rule 440; Wilson v. Freeman, supra, 185 S.W. at p. 994; Flanigan v. Carswell, supra, 324 S.W.2d at p. 840.

The question is not quite as acute in situations wherein the damages involved are more susceptible of exact proof, e. g. market value of personal property. Rector v. De Arana, 398 S.W.2d 911, 913 (Tex.Sup., 1966). But, even in this general type of case, we are told by our Supreme Court that "there is no rule prescribing the manner by which the court determines the amount of remittitur." Adams v. Houston Lighting & Power Company, supra, 314 S. W.2d at p. 830.

In reviewing a damage award challenged as being excessive, courts of civil appeals must, of necessity, move with caution.

"Before the appellate court considers the verdict, twelve jurors and an experienced trial judge have determined that the verdict is reasonable under the facts of the case. They have seen and heard the witnesses and the plaintiff." Comment, 29 Tex.Law Rev. 347, 352 (1951).

The practice of comparing awards made in other cases is unsatisfactory for the obvious reason that no two cases are alike. The review of other decisions as a guide is likewise subject to the criticism that the appellate court has gone outside of the record and considered evidence, i. e., what other courts have awarded, when such evidence could not, under any theory, have been admissible for consideration by the jurors.

In the other permissive approach, consideration confined to the record in the particular case under review without recourse to prior decisions, the appellate court is without any definitive guide or rules prescribing the manner in which it determines the amount of the remittitur (*Adams Case*, supra). Under this method of review, the process is essentially one of subjective ratiocination by three judges who have not seen or heard a living witness with any knowledge of the facts.

This ad hoc determination is, of necessity, based primarily upon a visceral reaction to the whole case as affected by the idiosyncrasies of the reviewing judge at the time the determination is made. Presumably, he will bear in mind that the law furnishes no other criterion by which to measure the damages which may be given than the discretion and sense of right and justice of the jury. Thomas v. Womack, 13 Tex. 580, 584 (1854). Likewise, he will remember that he is not permitted to consider the sum which he, if he had been a member of the jury panel, might have awarded in the case. Galveston, H. & S. A. Ry. Co. v. Stevens, 94 S.W. 395, 397 (Tex.Civ.App., 1906, error ref.).

Instead, in the seminal case of Texas & N. O. R. Co. v. Syfan, 91 Tex. 562, 44 S. W. 1064, 1066 (1898), he is told to use this method of procedure:

" * * * the court must first arrive at a conclusion as to what sum would be held to be reasonable if it had been assessed by the jury, before it could determine that the verdict was excessive in

amount; and the court in concluding that $3,500 would be considered a reasonable sum if it had been assessed in favor of the plaintiff, necessarily determined that the verdict of the jury was excessive in the sum of $2,061. The vice in the verdict consisted in the excess which constituted the only ground for interfering with the judgment. The remittitur eliminated the excess, and purged the verdict of the vice, leaving no ground for reversing the judgment."

The *Syfan* court then tells us that

"The $3,500 was the *proper* part of the verdict of the jury which tried the case. The judgment, therefore, of the court of civil appeals, was entered, *not upon its own finding,* but upon the verdict of the jury, after it had been purged * * *" (Emphasis supplied.)

The problem is aggravated when we realize that the question is one peculiarly within the jurisdiction of the courts of civil appeals, and its action, providing the "correct rule" is followed, is not reviewable by the Supreme Court. Beaumont, S. L. & W. Ry. Co. v. Schmidt, 123 Tex. 580, 72 S.W.2d 899, 904 (1934); Ochoa v. Winerich Motor Sales Co., 127 Tex. 542, 94 S.W.2d 416, 421 (1936).

After reviewing the record in this cause and bearing in mind the inadequacies of the legal guides governing our action in the matter, I concur in the finding that $17,500.00 would have been "reasonable if it had been assessed by the jury", and, consequently, the verdict of the jury is "excessive in the sum of" $2,500.00. Thus, for want of more specific criteria by which to measure the amount of the award, and following the rationale of *Syfan,* supra, I concur in the entry of judgment "not upon [our] own finding, but upon the verdict of the jury, after it [has] been purged." (44 S.W. at p. 1066). In so doing, however, I cannot help but comment that this is a rather tenuous line of reasoning and smacks more of an exercise of judicial discretion involving facts rather than law.