**HILL & HILL TRUCK LINE, INC.,**
Appellant,

v.

**James Edward OWENS, Appellee.**

**No. 7586.**

Court of Civil Appeals of Texas, Beaumont.

Aug. 29, 1974.

Remittitur Filed Sept. 16, 1974.

Motions for Rehearing Overruled Sept. 19, 1974.

Benckenstein & Norvell, Beaumont, for appellant.

Morris, Graves, Smith & Peveto, Orange, Fuller, Fuller & McPherson, Port Arthur, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, for appellee.

STEPHENSON, Justice.

This is an action for damages for personal injuries received by plaintiff, James Edward Owens. Trial was by jury, and judgment was rendered for plaintiff upon the verdict. The parties will be referred to here as they were in the trial court.

The injuries sued for resulted from an unloading accident on January 6, 1971, at a construction site in Port Arthur, Texas. Plaintiff was part of a crew unloading H-beams from defendant, Hill & Hill Truck Line, Inc.'s truck. Plaintiff was an employee of Spence & Howe as a pile driver, with welding as his primary job, but with unloading as a part of his regular duties.

The jury findings are: that it was negligence for defendant's driver to back the truck down the road with only one chain binding the load, which was a proximate cause of plaintiff's damages; that at the time defendant's driver backed up the truck with only one chain securing the load, he failed to maintain that management and control of the truck-tractor and trailer that would have been kept by a person of ordinary care under the same or similar circumstances, which was a proximate cause of plaintiff's damages; that plaintiff's damages are $500,000 considering physical pain and mental anguish, past and future, and loss of earnings in the past and loss of earning capacity in the future. The jury also found $8,100 past medical expenses and $5,000 future medical expenses.

■ One of the primary questions raised by defendant on this appeal is excessiveness of the verdict. Much of the almost one thousand pages of the statement of facts is devoted to medical testimony. All of the evidence shows that plaintiff is suffering from paranoid schizophrenia and that such condition was precipitated by the accident made the basis of this lawsuit. This case is unique in that we have not been cited, nor have we found a case in Texas in which a plaintiff recovered damages for this particular type of injury with the resultant loss of earnings and earning capacity.

In Collins v. Gladden, 466 S.W.2d 629 (Tex.Civ.App., Beaumont, 1971, error ref.

n. r. e.), this writer together with Associate Justice Keith, had occasion to write at length on the subject of appellate review as to excessiveness of judgments. The matters written there will not be repeated here, but are made a part of this opinion by reference only.

The record before us shows the following. This accident occurred January 6, 1971, and this trial began September 4, 1973. The truck in question was loaded with sixteen 8 inch H-beams, 70 feet long, weighing 2,450 pounds each. While defendant's driver was backing the truck, the hook on the chain broke loose, and the beams fell upon the plaintiff. Admittedly, the amount of physical damage was not as much as expected, as plaintiff received severe lacerations generally, compound fractures of the little and fourth fingers on the right side, contusion of the right shoulder and right hip and possible cracked ribs. The little finger was amputated later, but otherwise plaintiff has apparently fully recovered from the physical injuries here enumerated. However, as stated above, since the accident, plaintiff has suffered and, in all probability, will continue to suffer from paranoid schizophrenia.

Testimony was given in this case by: Dr. James R. Thomas, an M.D. and general surgeon; Dr. M. Fukuda, an M.D. specializing in orthopedics; Dr. R. J. Goodall, a neurological surgeon; Dr. Ramesh Parikh, a physician psychiatrist; Dr. P. W. Bailey, a psychiatrist; Ted Jolly, a vocational counselor and psychologist; Dr. Exter F. Bell, Jr., a doctor of medicine and psychiatrist. Plaintiff was sent to this last doctor by counsel for defendant, and his testimony was typical of all the others.

Dr. Bell testified that when he examined plaintiff, plaintiff was a highly nervous tense person exhibiting facial twitches and jerks, and continuously grimacing with his mouth, jerking his head from side to side and wringing his hands. That plaintiff became more agitated as the interview progressed. He stated his opinion of plaintiff as follows:

"Schizophrenia, paranoid type, in partial remission manifested by facial tics and muscular twitching, loss of interest and apathy, schizoid withdrawal from human contact, fears and phobias and a morbid pre-occupation with his mental and physical condition, together with impotence and memory defect.

\* \* \* \* \* \*

"Mr. Owens is suffering from a major psychiatric illness which causes him to show withdrawal symptoms. That is, he now has a marked tendency to stay away from other people. His face jerks and twitches, and he has very little interest in what goes on around him. Memory loss is selfexplanatory. Impotence is the loss of sexual function."

He also stated that his prognosis for plaintiff was poor, and, in his opinion in reasonable medical probability, plaintiff's injuries were caused by this industrial accident.

The record shows that plaintiff went back to work as a welder, but because of his mental condition he could not perform such job. He received an injury on one attempt to work, was let go from another, and quit a third. At the time of the trial plaintiff was working at a fishing marina doing such jobs as sweeping out, pumping gas, cleaning windows, and cutting the grass, for which he was paid at the rate of $2 per hour. He now enjoys doing this kind of work. According to the medical testimony, plaintiff should not return to work as a welder but should continue to do quieter work, that plaintiff should not attempt hazardous work. As Dr. Bell put it: "[H]e is able to perform undemanding tasks." All doctors asked, testified that plaintiff needed further medication and psychiatric treatment.

The evidence showed that from the date of the accident plaintiff had a life expectancy of 44.091 years and a work life expectancy of 35.391, which assumes retirement at 62. Plaintiff's income, as a welder, averaged $10,812 for the last five years

before this incident. Calculating plaintiff's income growth at the rate of 6.2 percent per annum, and deducting the amount of actual earnings, from the date of the accident to the date of the trial, plaintiff suffered a loss of $25,737.94. Calculating plaintiff's loss of earning capacity in the future by using the same growth rate for the balance of his work life expectancy, less the amount of income he will probably make in his present condition less a discount for payment now, produces the major portion of the amount of money plaintiff is entitled to recover.

We have made a careful study of the record before us as to all of the elements of damages to be considered, together with a study of the amounts of verdicts in other reported cases, and we have concluded the verdict is excessive by $200,000.

Defendant contends it had completed its part of the job in transporting the H-beams from Houston to the job site and that this accident occurred during the unloading procedure which was Spence & Howe's responsibility. Defendant concludes from that reasoning that it had "no duty" under the circumstances. We disagree.

■ It is true that each had the responsibility set forth above, that is, defendant to deliver the H-beams and Spence & Howe to unload them. However, we have concluded that the delivery had not been completed and defendant still had a "duty" to plaintiff to use ordinary care.

■ The specific facts, about which there is little disagreement, show the following: This load of H-beams was picked up in Houston by defendant and brought to Port Arthur. When defendant's driver arrived at the job site, he was shown by the unloading crew where to spot the truck. Defendant's driver backed the truck to the designated place, and the chains were removed. The unloading crew, using a dragline, removed one of the H-beams and decided the truck should be moved to a different location. Defendant's driver put one chain around the load of H-beams and began to back the truck as directed. The land was not level, and the unloading crew placed some 4 by 4's on the ground for the truck to back on to. As the defendant's driver proceeded to back on to the 4 by 4's, the trailer was twisted and put in a bind; the hook on the chain broke, and the H-beams fell from the truck. As stated above, the jury found it was negligence to do such backing with only one chain binding the load. The question of "duty" was one for the trial court to determine, which it did by submitting the negligence and proximate cause issues and by entering judgment for plaintiff. These points of error are overruled.

■ Defendant has point of error that the jury findings as to negligence and proximate cause have no support in the evidence, insufficient support in the evidence, and that such findings are contrary to the great weight and preponderance of the evidence. We pass upon the "no evidence" points by considering only the evidence favorable to such findings, and we pass upon the remaining points by considering the entire record.

The evidence shows that H-beams were loaded on defendant's trailer in Houston by Bethlehem Steel Corporation's stevedores, two stacks wide and eight high. Before leaving Houston, defendant's driver testified that he chained the load down by using four chains. These chains were removed, and one H-beam was unloaded when defendant's driver was asked to move the truck to another location. Defendant's driver put one chain back around the load, and the evidence is conflicting at that point. Defendant's driver testified he was told by the unloading crew that one chain was sufficient. Other witnesses testified that the decision to use only one chain was made by defendant's driver. The jury resolved that conflict in the evidence in favor of the plaintiff by the answers to the special issues. Although defendant's driver denied he made the deci-

sion to use only one chain, he admitted that he had the final authority to see that the load was safely chained down before moving the truck and would not have done so if the unloading crew had asked him to move the truck with no chains on it. Defendant's executive vice-president testified it was their responsibility to see that the load was safely bound down before getting on the highway, and he would not consider one chain as being safe. These points of error are overruled.

Defendant contends next that the conditions causing this accident were open and obvious to plaintiff and that the doctrine of "volenti non fit injuria" has application. The evidence shows the unloading crew had difficulty with the first truck that arrived that morning which was loaded in the same manner as the second truck which was involved in the case before us. The H-beams fell off of the first truck as an attempt was being made to unload it. Defendant argues that plaintiff saw what happened to the first truck, and he knew the place they were attempting to unload the second truck was soft, rough, and uneven, and also that plaintiff knew that only one chain had been put around the load when the attempt was made to move the truck.

The jury failed to find that plaintiff voluntarily assumed the risk of the beams falling off the trailer on him. The instruction given by the court in connection with that issue was as follows:

"You are instructed that in order for the Plaintiff James Edward Owens to assume the risk, he must have actually known of the condition which caused his injury and he also must have actually and fully appreciated the nature and extent of the danger involved in encountering the condition, and he must have voluntarily and of his own free will encountered the danger of the condition, causing his injuries, if any."

We have no point of error complaining about that form of submission. That is, defendant does not complain about the failure of the court to submit additional issues, or additional instructions and definitions. The evidence does not prove the danger was open and obvious or the defense of "volenti" as a matter of law. See Adam Dante Corporation v. Sharpe, 483 S.W.2d 452 (Tex.1972). These points are overruled.

Two matters of jury misconduct are made the basis of points of error. The foreman of the jury, Henry Lee Turner, Sr., answered "no" to the question on the jury information form asking: "Have you ever been a party to a lawsuit?" On a hearing of defendant's motion for new trial, Turner admitted he had filed suit against Mobil Oil Company seeking to recover $95,000 for personal injuries and that the case had been settled. Turner testified on such hearing that he thought the question was referring to an actual trial in the courtroom.

The other matter complained about is that three of the jurors gave unsworn testimony during their deliberations. Such testimony had to do with experience as truck drivers, using chains to secure loads on trucks and mud flaps. Eight of the twelve jurors testified on the hearing, and there was no general agreement among them that any of the matter complained of actually transpired. In overruling the motion for new trial no specific findings were made by the trial court as to whether the misconduct did or did not occur. In that connection, the order contains only this statement: "[A]nd the Court further finds that any jury misconduct, if any, was harmless and not sufficient to support an order granting a new trial . . . ." This is an implied finding that the jury misconduct did not occur. Fountain v. Ferguson, 441 S.W.2d 506 (Tex.1969).

Rule 327, Texas Rules of Civil Procedure, provides in part that where the misconduct of the jury is that they received other testimony or that a juror gave an incorrect answer on voir dire examination, that the court should hear evidence, "and

may grant a new trial if such misconduct proved, or the testimony received . . . or the erroneous or incorrect answer . . . be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

There was no showing on the hearing of the motion for new trial that injury probably resulted to defendant from the action of the juror asserted to be jury misconduct. There was no demonstration that any juror was influenced by any of the matters complained about by showing the vote of the jurors before and after the alleged statements. These points are overruled.

If, within ten days, plaintiff will remit the sum of $200,000, the judgment will be reformed and affirmed; otherwise, it will be reversed and remanded.

The judgment is affirmed, conditionally.